Nancy J. STENDER, Diane Skillsky, Julie Valentine–Dunn, Reba Barber–Money, Irma Hernandez, Anita Martinez and Jon Gold on behalf of themselves and all other similarly situated, Plaintiffs,

v.

LUCKY STORES, INC., Defendant.

No. C–88–1467 MHP.

United States District Court, N.D. California.

Jan. 7, 1992.

Brad Seligman, Jocelyn D. Larkin, Donna M. Ryu, Saperstein, Seligman & Mayeda, Oakland, Cal., for plaintiffs.

Kirby Wilcox, Kathleen V. Fisher, James E. Boddy, Jr., Portia R. Moore, Morrison & Foerster, San Francisco, Cal., for defendant.

## AMENDED MEMORANDUM AND ORDER

PATEL, District Judge.

Plaintiffs have brought this class action against Lucky Stores, Inc. on behalf of Black and female employees working in retail stores within Lucky's Northern California Food Division. Plaintiffs allege discrimination on the basis of race and sex in initial job placement, allocation of work hours, reclassification of part-time employees to full-time positions, and promotions. Claims are brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1981; and the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12900–12996.

On November 21, 1991 the President signed into law the Civil Rights Act of 1991. The Act "respond[s] to recent deci-sions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protections to victims of discrimination." Civil Rights Act § 3(4). The Civil Rights Act will affect the law in this case if it applies to cases which were pending at the time of its enactment. Plaintiffs contend that the Act is applicable to their claims while defendant argues that the provisions of the Act should not be applied to this case. The only case which this court has found which analyzes the question of the retroactivity of the 1991 Civil Rights Act in depth is *Mojica v. Gannett Co., Inc.*, 779 F.Supp. 94 (N.D.Ill.1991).[1] That court held that the Act was applicable to cases which were pending at the time of its enactment. For the following reasons, this court holds that the Civil Rights Act of 1991 is applicable to plaintiff's claims.

## DISCUSSION

### A. The Plain Language of the Act

■ "The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). The language of the 1991 Civil Rights Act indicates that the Act should apply to cases which were pending at the time of its enactment.

Section 402 of the 1991 Civil Rights Act provides:

(a) In General.—Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) Certain Disparate Impact Cases.—Notwithstanding any other provision of this Act, nothing in this Act shall apply

---

1. Two district courts have decided the question of the retroactivity of the 1991 Civil Rights Act without analysis, *James v. American International Recovery, Inc.*, 1:89–CV–321–RHH, 1991 WL 281734 (N.D.Ga. Dec. 3, 1991) (refusing to apply the Act and referencing a Magistrate's Report and Recommendation which was decided before the date of the Act and contained no discussion of the Act); *La Cour v. Harris County*, H–89–1532 (S.D.Tex. Dec. 6, 1991) (memorandum order applying the act without analysis).

to any disparate impact case for which a complaint was filed before March 1, 1975 and for which an initial decision was rendered after October 30, 1983.

The Ninth Circuit has stated that "the fact that Congress expressed its intention that [a] statute take effect upon enactment is some indication that it believed that application of its provisions was urgent." *In re Reynolds*, 726 F.2d 1420, 1423 (9th Cir. 1984). In *Reynolds*, the Omnibus Budget Reconciliation Act of 1981 was silent as to whether it should apply to cases which were pending when it was enacted. However, the court weighed the fact that the Act was to be effective upon enactment in favor of the Act's retroactive application.

More importantly, reading clauses (a) and (b) of section 402 together makes it clear that the 1991 Civil Rights Act applies to cases which were pending at the time of its enactment. Section 402(b) carves out an exception to the Act for the parties in the currently pending *Wards Cove* case.[2] The Supreme Court has stated on many occasions that "no provision [of a statute] should be construed to be entirely redundant." *See Kungys v. U.S.*, 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988); *see also Arcadia v. Ohio Power Co.*, ── U.S. ──, 111 S.Ct. 415, 419, 112 L.Ed.2d 374 (1990). If the Civil Rights Act only applied prospectively, section 402(b) of the Act would be meaningless. The Supreme Court has also expressed a hesitancy "to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837, 108 S.Ct.

2182, 2189, 100 L.Ed.2d 836 (1988). In this case, the only interpretation of Section 402 that does not make clause (b) meaningless is that the Act is applicable to cases which were pending at the time of its enactment, with the exception of *Wards Cove*.[3]

The language of section 109 of the Act also supports interpreting the Act to apply retroactively. Section 109, which legislatively overrules *E.E.O.C. v. Arabian American Oil Co.*, ── U.S. ──, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991), provides:

(c) Application of Amendments.—The amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act.

Like section 402(b), section 109(c) would be meaningless unless the Civil Rights Act applies to cases which were pending at the time of its enactment.[4]

Accordingly, the court holds that the 1991 Civil Rights Act must be interpreted to apply to cases which were pending at the time it was enacted because that "construction is required ... by necessary implication." *Nelson v. Ada*, 878 F.2d 277, 280 (9th Cir.1989) (citing *Bruner v. United States*, 343 U.S. 112, 117 n. 8, 72 S.Ct. 581, 584 n. 8, 96 L.Ed. 786 (1952)).

## B. The Legislative History of the Act

The legislative history of the 1991 Civil Rights Act does not contradict the fact that the plain language of the Act supports its retroactive application. *See Kaiser*, 110 S.Ct. at 1575. The statements and interpretive memoranda of different members of the House and Senate conflict on the question of retroactivity.[5] An amendment

---

2. Senator Murkowski, who drafted section 402(b), understood that the Act "would apply retroactively to all cases pending on the date of enactment, regardless of the age of the case. [His] amendment [was intended to] limit the retroactive application of [the Act with regard to the *Wards Cove* case]." 137 Cong.Rec. S15,953 (daily ed. Nov. 5, 1991).

3. The court is unwilling to make any determinations about section 402 based on section 110(b), which states that section 110 "shall take effect on the date of enactment" of the Act. Although section 110(b) is redundant, it is not inconsist-

ent with the court's determination that the 1991 Civil Rights Act should be retroactively applied.

4. This interpretation was suggested by Rep. Edwards: "[Sections 402(b) and 109(c) ] express a clear purpose to deny retroactive application in the circumstances set forth. Our decision not to use similar language in § 402(a) clearly shows our different purpose in all other circumstances." 137 Cong.Rec. H9,530 (daily ed. Nov. 7, 1991).

5. *See, e.g.,* 137 Cong.Rec. H9,526–32 (daily ed. Nov. 7, 1991) (Rep. Edwards) (in favor of retroactivity); 137 Cong.Rec. S15,472–78 (daily ed.

which would have explicitly made the Act prospective was not offered,[6] and the Justice for Wards Cove Workers Bill, which would explicitly make the Act retroactive, is still in committee.[7] Thus, the legislative history of the Act does not weigh in favor of or against the retroactive application of the Civil Rights Act.[8]

Although the specific legislative history of the 1991 Civil Rights Act is unclear as to the propriety of its retroactive application, in general restorative legislation should be applied retroactively. Where "Congress enacts [a] statute to clarify the Supreme Court's interpretation of previous legislation thereby returning the law to its previous posture," the Act must be applied

retroactively. *Ayers v. Allain*, 893 F.2d 732, 754–55 (5th Cir.), *vacated on other grounds*, 914 F.2d 676 (5th Cir.1990) (en banc), *cert. granted on other grounds*, —— U.S. ——, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991). The Civil Rights Act reverses or modifies numerous recent Supreme Court cases including *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989);[9] *Martin v. Wilks*, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989);[10] *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989);[11] *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989);[12] and *West Virgi-*

Oct. 30, 1991) (Sen. Dole) (against retroactivity); 137 Cong Rec. S15,483–85 (daily ed. Oct. 30, 1991) (Sen. Danforth) (against retroactivity); and 137 Cong.Rec. S15,485–86 (daily ed. Oct. 30, 1991) (Sen. Kennedy) (in favor of retroactivity). However, interpreting the statute to apply to cases which were pending at the time of its enactment was the only position that obtained bipartisan support. 137 Cong.Rec. H9,549 (daily ed. Nov. 7, 1991) (Rep. Fish).

6. The Senate gave Senator Warner its consent to offer an amendment limiting the bill to prospective application. 137 Cong.Rec. S15,390 (daily ed. Oct. 29, 1991). However, Senator Warner decided not to offer the amendment. 137 Cong. Rec. S15,457 (dated Oct. 30, 1991).

7. The Justice for Wards Cove Workers Bill was introduced by Senator Adams on November 13, 1991. 137 Cong.Rec. S16,611 (daily ed. Nov. 13, 1991). The purpose of the bill is "to repeal the blatant special interest amendment to the Civil Rights Act of 1991 that would exempt the Wards Cove Packing Co. from coverage under that landmark legislation." 137 Cong.Rec. S16,620 (daily ed. Nov. 13, 1991). In order to accomplish this goal, the bill strikes section 402(b) of the 1991 Civil Rights Act. The Act must be retroactive if it would be applicable to the parties in *Wards Cove* but for section 402(b).

8. Defendant argues that when there are competing interpretations of a statute, deference should be given to the interpretation of the statute offered by the President. However, although President Bush said that the 1991 Civil Rights Act should only be applied prospectively, BNA Daily Labor Report (Nov. 22, 1991), it is not the place of the President to write or to interpret federal statutes. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587, 72 S.Ct. 863, 867, 96

L.Ed. 1153 (1952) ("In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker. The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad.").

9. Section 107 of the Act modifies the Supreme Court's holding in *Price Waterhouse*, which held that an employer could avoid liability for intentional discrimination in "mixed motive" cases if the employer could demonstrate that the same action would have been taken in the absence of the discriminatory motive. Section 107 states that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 1991 Civil Rights Act § 107.

10. Section 108 legislatively overrules *Martin v. Wilks* by prohibiting challenges to consent decrees by individuals who had a reasonable opportunity to object to the decree or whose interests were adequately represented by another party.

11. Section 112 legislatively reverses *Lorance v. AT & T*, which held that the period for challenging an allegedly discriminatory seniority rule begins when the rule is adopted, by allowing employees to challenge a seniority system "when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system." 1991 Civil Rights Act § 112.

12. Section 101 of the Act reverses limits on the scope of 42 U.S.C. § 1981 created by *Patterson*.

*nia University Hospital, Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991).[13] Congress' clear intention was to undo the effects of these cases, which it believed were wrongly decided, and to restore civil rights law to its previous state. The restorative intent behind the 1991 Civil Rights Act can only be fully satisfied by applying it to cases which were pending at the time of its enactment.

With respect to the propriety of applying restorative legislation retroactively, the 1991 Civil Rights Act is similar to the Civil Rights Restoration Act of 1987. The purpose of the Civil Rights Restoration Act of 1987 was to overrule legislatively *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984), which limited the scope of Title IX. The Civil Rights Restoration Act was silent as to whether it was to be applied retroactively. However with only one exception, every court which has addressed the issue has held that the Act should apply to cases which were pending at the time of its enactment. *See Lussier v. Dugger,* 904 F.2d 661, 665 (11th Cir.1990) ("statutory changes that are procedural or remedial in nature apply retroactively."); *Ayers v. Allain,* 893 F.2d at 754–55; *Leake v. Long Island Jewish Medical Center,* 695 F.Supp. 1414, 1417 (E.D.N.Y. 1988), *aff'd,* 869 F.2d 130, 131 (2d Cir.1989) (per curiam); *Bonner v. Arizona Dep't of Corrections,* 714 F.Supp. 420, 422–23 (D.Ariz.1989). *But see DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).[14] In this case, in addition to the express restorative purpose of the Civil Rights Act, the

plain language of the Act also supports its retroactive application.

## C. Presumption of Retroactivity

■ In addition, case law supports the retroactive application of the 1991 Civil Rights Act. The Supreme Court has acknowledged that there are two inconsistent lines of cases regarding what courts should do when the plain language and legislative history of a statute do not speak conclusively on the question of whether the statute is to be applied retroactively. *Kaiser,* 110 S.Ct. at 1577. One line of cases holds that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The second line of cases holds that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown University Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988).

Although it has not explicitly decided the issue, *see Ayala–Chavez v. U.S. INS,* 945 F.2d 288, 295 n. 9 (9th Cir.1991), the Ninth Circuit has followed *Bradley* and accepted the presumption of retroactivity.[15] *See Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1424–25 (9th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Gioda v. Saipan Stevedoring Co.,* 855 F.2d 625, 630 (9th Cir.1988); *De Gurules v. Im-*

---

Section 101 defines "make and enforce contracts" as "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 1991 Civil Rights Act § 101.

**13.** Section 113 legislatively reverses *West Virginia University Hospital, Inc. v. Casey* by permitting recovery of expert fees as part of the attorney's fee award.

**14.** *DeVargas* is distinguishable from this case because the language of the 1991 Civil Rights Act requires that the statute be interpreted retroactively. The Civil Rights Restoration Act did not include any sections which would have been

rendered meaningless if the statute was applied prospectively. *DeVargas,* 911 F.2d at 1384–85.

**15.** Defendant cites *Alpo Petfoods, Inc. v. Ralston Purina Co.,* 913 F.2d 958 (D.C.Cir.1990), for the proposition that the D.C.Circuit has rejected the *Bradley* presumption of retroactivity. However, neither party in that case raised the issue of whether the amendment to the Lanham Act applied retroactively, therefore the court's discussion of retroactivity was merely advisory. *Id.* at 963 n. 6. In addition, the amendment took place more than two years after the conduct challenged in that case occurred. *Id.*

*migration & Naturalization Service,* 833 F.2d 861, 863 (9th Cir.1987); and *Northern Mariana Islands v. Kawano,* 917 F.2d 379, 381–82 (9th Cir.1990), *cert. denied,* ─ U.S. ──, 111 S.Ct. 1116, 113 L.Ed.2d 224 (1991). *But see Nelson v. Ada,* 878 F.2d at 280 (stating presumption in favor of prospective application of legislative enactments without citing either *Bradley* or *Bowen* ).[16] Indeed, this court has also accepted the *Bradley* presumption of retroactivity. *See U.S. ex rel. McCoy v. California Medical Review, Inc.,* 723 F.Supp. 1363, 1367 (N.D.Cal.1989). Therefore, this court will apply the presumption of retroactivity announced in *Bradley* and the Ninth Circuit cases following *Bradley.*[17]

The *Bradley* presumption of retroactivity may only be rebutted if it will "result in manifest injustice or [if] there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. In the case of the 1991 Civil Rights Act, the statutory direction indicates that the Act should be applied retroactively and the legislative history is unclear. In order to determine whether retroactive application of the Act would result in manifest injustice, the court must consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019.

### 1. The Nature and Identity of the Parties

■ The first prong of the *Bradley* "manifest injustice" test recognizes a distinction between merely private disputes and litigation which involves important public interests. The *Bradley* court stated that

> 'in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns ... the court must decide according to existing laws.'

*Bradley,* 416 U.S. at 712, 94 S.Ct. at 2016 (quoting *U.S. v. Schooner Peggy,* 5 U.S. (1 Cranch) 103, 110 2 L.Ed. 49 (1801)). Although this case involves private parties, it also involves matters of great public concern—remedying race and sex discrimination and promoting equality. Thus, this first factor weighs in favor of the retroactive application of the 1991 Civil Rights Act.

### 2. The Nature of Their Rights

The second prong of the *Bradley* "manifest injustice" test focuses on whether retroactive application of the law would "infringe upon or deprive a person of a right that had matured or become unconditional." *Bradley,* 416 U.S. at 720, 94 S.Ct. at 2020. Defendant argues that the 1991 Civil Rights Act has significantly altered the law in disparate impact cases by expanding a defendant's liability for intentional discrimination,[18] by changing the rule that a plaintiff must link a statistical disparity to a specific employment practice,[19] and by shifting the burden of proof.[20]

The court rejects defendant's argument that by expanding defendant's liability for intentional discrimination the Civil Rights Act has infringed upon its unconditional rights. Defendant has no unconditional

---

**16.** *Nelson* can be distinguished from this case because the amendment to the statute in *Nelson* was not intended to reverse or modify judicial decisions. The amended *Nelson* statute gave the government of Guam more authority over the Guam educational system. In addition, the interpretation that the 1991 Civil Rights Act must apply retroactively is "required ... by necessary implication" from the language of the Act. *Nelson,* 878 F.2d at 280.

**17.** In addition, *Bowen* can be distinguished from this case. Despite the Supreme Court's broad language in *Bowen,* that case only dealt with the issue of whether an administrative

agency has the power, pursuant to federal statute, to promulgate regulations which apply retroactively. *Bowen* did not concern the retroactive application of a statute. Moreover, the 1991 Civil Rights Act must apply retroactively because the "language [of the Act] requires this result." *Bowen,* 488 U.S. at 208, 109 S.Ct. at 471.

**18.** *See* 1991 Civil Rights Act § 102.

**19.** *See* 1991 Civil Rights Act § 105(a).

**20.** *Id.*

right to limit plaintiffs to a particular type of remedy. *See Gulf Offshore Co., Div. of Pool Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879, 69 L.Ed.2d 784 (1981). In fact, the Supreme Court has upheld the retroactive application of laws which enhance economic penalties for conduct which occurred prior to the enactment of a statute. *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 728–31, 104 S.Ct. 2709, 2717–18, 81 L.Ed.2d 601 (1984). Moreover, defendant has always been subject to broader compensatory and punitive damages under the FEHA and 42 U.S.C. § 1981 for the same conduct.

The court also rejects defendant's contention that the Civil Rights Act should only be applied prospectively because it has changed the substantive law in disparate impact cases.[21] The 1991 Civil Rights Act has not changed that substantive law. It has merely changed what plaintiffs must show to prove their case and the remedies available to plaintiffs. In fact, the 1991 Civil Rights Act has simply returned the law to the position that it was in when this complaint was filed in 1988, when Lucky designed its first affirmative action plan for the Northern Food division, when the E.E.O.C. issued its Determination finding reasonable cause to believe Lucky had engaged in classwide discrimination, and when discovery began in this case. After the filing of this action *Wards Cove* changed the rules applicable to disparate impact cases; the Civil Rights Act has restored the law to the state it was in when this claim arose.

In addition, there have been no findings of fact in this case. Therefore, defendant cannot contend that application of the Civil Rights Act will infringe on any of its matured rights.

### 3. The Nature of the Impact of the Change in Law upon those Rights

Although the court has found that defendant has no substantive rights which are affected by the Civil Rights Act of 1991, nonetheless the court will address the third *Bradley* "manifest injustice" factor. This last factor concerns whether "new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2021. The discriminatory conduct which plaintiffs allege was unlawful under Title VII from the beginning of the liability period in this case to the present. Therefore, this last factor also supports the court's holding that the application of the 1991 Civil Rights Act to this case will not result in manifest injustice.

## CONCLUSION

1. The Civil Rights Act of 1991 is applicable to plaintiffs' claims.

2. The parties are ordered to submit simultaneous memoranda to the court within thirty (30) days of the date of this amended order concerning:

a. How the Act affects the use of statistical evidence in disparate impact and disparate treatment cases.

b. The appropriate post-*Wards Cove* analysis in disparate impact cases as a result of section 105 of the Act, 42 U.S.C. § 2000e–2 as amended.

c. How the Act affects any other issues now pending before this court in *Stender v. Lucky.*

The court will then decide if additional briefing or a hearing is necessary.

IT IS SO ORDERED.

---

**21.** Defendant's reliance on *Bennett v. New Jersey*, 470 U.S. 632, 105 S.Ct. 1555, 84 L.Ed.2d 572 (1985), is misplaced. That case held that the *Bradley* presumption of retroactivity cannot be applied when the effect of the statute is to make formerly legal activity illegal. In this case, the alleged discriminatory conduct has always been illegal under Title VII and the 1991 Civil Rights Act merely changes how plaintiffs may redress the alleged violation of their rights.