**Annie Rosella BURCHFIELD, Plaintiff,**

v.

**Edward DERWINSKI, Secretary, U.S. Department of Veterans Affairs, Defendant.**

**Civ. A. No. 91–F–1404.**

United States District Court, D. Colorado.

Jan. 29, 1992.

Walter E. Brown III, Billie G. Burchfield, Glenwood Springs, Colo., Adam J. Conti, Mack & Bernstein, Atlanta, Ga., for plaintiff.

Michael J. Norton, U.S. Atty., Kathleen L. Torres, Asst. U.S. Atty., Denver, Colo., for defendant.

## ORDER REGARDING APPLICABILITY OF 1991 CIVIL RIGHTS ACT

SHERMAN G. FINESILVER, Chief Judge.

This matter comes before the Court on Plaintiff's Motion to Amend Complaint and Try This Matter by Jury, filed December 18, 1991. Plaintiff seeks to apply the provisions of the Civil Rights Act of 1991 (the "Act") to a case that was pending prior to the date of enactment. This matter has been fully briefed by the litigants. Jurisdiction is based on 28 U.S.C.A. § 1331 (West Supp.1991). For the reasons stated below, the Motion to Amend Complaint and Try This Matter by Jury is DENIED.

### I.

Plaintiff Annie Rosella Burchfield ("Burchfield") is a nurse employed by the United States Department of Veterans Affairs ("VA Department").[1] Burchfield has been employed by the VA Department, or its predecessor, the Veterans Administration since January 1980. During 1988, Burchfield was employed at the Richmond Veterans Affairs Medical Center. Burchfield's supervisor was Darlene Ewers.

During the summer of 1988, while temporarily separated from her husband, Burchfield alleges that Ewers informed her that if Burchfield reconciled with her husband, then her VA career would be finished, but that if Burchfield divorced her husband, then Ewers would assist Plaintiff in securing a chief nurse position in the VA system. Burchfield alleges that Ewers showed sexual interest in her, by brushing up against Plaintiff's breasts on at least one occasion and by trying to share a hotel room with Plaintiff on a business trip.

Burchfield subsequently reconciled with her husband. After this reconciliation, Burchfield charges that Ewers disclosed private and embarrassing facts about her and made false and disparaging remarks about her sexuality and job performance to other VA employees.

Plaintiff brought this matter to the attention of the VA Department. An informal resolution was reached and Burchfield was transferred to the VA Medical Center in Grand Junction, Colorado. Burchfield claims that the VA Department assured her that no information about the incident would be disseminated to her next duty station.

Burchfield began working at Grand Junction on December 18, 1988. Burchfield claims that Grand Junction's Chief of Nursing Service Raedelle Mundy learned of her prior problems in late January or February of 1989. Burchfield also alleges that Mundy engaged in a pattern of retaliation and ostracism that included the dissemination of false information, poor work performance appraisals, and extended assignments away from her official duties.

Plaintiff's two-count Employment Discrimination Complaint, filed August 15, 1991, seeks declaratory, remedial, and injunctive relief for sex discrimination and retaliation pursuant to 42 U.S.C.A.

---

**1.** All factual recitations contained in this Order have been alleged in the litigants' pleadings.

§§ 2000e–5 and –16 (West 1981). November 21, 1991 is the effective date of the Act. Therefore, this case was pending before the Act's enactment.

## II.

■ Fed.R.Civ.P. 15(a) provides that a motion for leave to amend pleadings "shall be freely given when justice so requires." However, courts will deny motions to amend pleadings when such amendments would be futile or would not survive a motion to dismiss. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir.1985); *In re Ampicillin Antitrust Litigation*, 82 F.R.D. 647, 650 (D.D.C.1979).

## III.

■ On November 21, 1991, President Bush signed the Act into law. Plaintiff maintains that the Act's provisions should apply to cases pending at the time of enactment. We disagree.[2]

A review of Supreme Court precedents reveals two conflicting lines of authority on the issue of retroactive application of newly enacted laws or regulations to pending cases. In *Bradley v. School Board of the City of Richmond*, 416 U.S. 696, 711–17, 94 S.Ct. 2006, 2016–19, 40 L.Ed.2d 476 (1973), and *Thorpe v. Housing Authority of the City of Durham*, 393 U.S. 268, 281–83, 89 S.Ct. 518, 526–27, 21 L.Ed.2d 474 (1969), the Supreme Court directed the lower courts to apply the law in effect at the time a decision was rendered, even if that involved retroactive application to pending cases. In *Bradley*, the Court articulated a presumption that "even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." *Bradley*, 416 U.S. at 715, 94 S.Ct. at 2018.

The second line of cases includes *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990), and *Bow-*

*en v. Georgetown University Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The *Georgetown* Court adopted the following presumption:

Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.

*Georgetown*, 488 U.S. at 208, 109 S.Ct. at 471. This presumption directly conflicts with the presumption enunciated in *Bradley*. In *Bonjorno*, the Court recognized the apparent conflict between the *Bradley* and *Georgetown* lines of authority, but declined to reconcile those precedents, reasoning that "under either view, where the congressional intent is clear, it governs." *Bonjorno*, 494 U.S. at 837, 110 S.Ct. at 1577.

In a comprehensive and well-reasoned opinion, the Tenth Circuit expressly adopted the *Georgetown* presumption against retroactivity and rejected the *Bradley* presumption in favor of retroactivity. *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1389–92 (10th Cir. 1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991); *accord Wagner Seed Co. v. Bush*, 946 F.2d 918, 924 (D.C.Cir.1991). The *DeVargas* Court considered the issue of retroactive application with respect to the Civil Rights Restoration Act of 1987, Pub.L. No. 100–259, 102 Stat. 28 (1988) ("Restoration Act"). In *DeVargas*, the Tenth Circuit focused upon congressional intent to determine whether the Restoration Act applied retroactively to pending cases. *DeVargas*, 911 F.2d at 1384.

The *DeVargas* Court held that new laws would not be applied retroactively absent "clear congressional intent" to the contrary. *Id.* The Tenth Circuit found that the "clear congressional intent" standard for retroactive application of statutes "requires articulated and clear statements on retroactivity, not inferences drawn from the general purpose of the legislation." *Id.*

---

**2.** We expressly limit our opinion to cases filed and pending prior to the date of enactment. Accordingly, we decline to address whether the Act applies to cases filed after the Act's effective date that challenge pre-Act conduct.

at 1387. Applying this standard, the Tenth Circuit found floor statements by Congressmen in favor of retroactivity unpersuasive in light of the absence of any mention of retroactive application in the statute or the Senate report. *Id.* at 1386.

The Circuits, however, remain divided in choosing among the *Bradley* and *Georgetown* presumptions regarding retroactivity.[3] Reported opinions from the district courts indicate a deep division on the issue of applying the Act retroactively to pending cases. In circuits where the *Georgetown* presumption against retroactivity has been adopted, district courts generally have rejected retroactive application of the Act to cases pending on the date of enactment. *Van Meter v. Barr,* 778 F.Supp. 83, 84–86 (D.D.C.1991) (Gesell, J.); *Hansel v. Public Serv. Co. of Colo.,* 778 F.Supp. 1126, 1136 (D.Colo.1991) (Babcock, J.); *accord James v. American Int'l Recovery, Inc.,* 1991 WL 281734, 1991 U.S.Dist. LEXIS 18408 (N.D.Ga. December 3, 1991); *see also Sorlucco v. New York City Police Dep't,* 780 F.Supp. 202, 213 (S.D.N.Y.1992) (precluding retroactive application to a case that had been tried prior to enactment under a narrow reading of *Bradley*). In circuits where the *Bradley* presumption of retroactivity is controlling, district courts have applied the Act retroactively. *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1306–07 (N.D.Cal.1992); *King v. Shelby Medical Center,* 779 F.Supp. 157, 157–59 (N.D.Ala.1991); *Mojica v. Gannett Co.,* 779 F.Supp. 94, 99 (N.D.Ill.1991) (relying upon the Seventh Circuit's precedent).

We also note that the Equal Employment Opportunity Commission has issued an opinion against retroactive application of the Act and has determined not to seek to apply the Act's provisions to pending cases.

E.E.O.C. Notice No. 915.002 (December 27, 1991).

Applying the standards set forth in *DeVargas,* we begin by considering the language of the Act. Section 402 of the Act provides:

> (a) ... Except as otherwise specifically provided, this Act and the amendments made by this Act shall take effect upon enactment.
>
> (b) ... Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.

On its face, the language of section 402 fails to express a clear congressional intent regarding the retroactive application of the Act. In other situations, Congress has stated explicitly that new legislation shall apply to pending litigation. *See DeVargas,* 911 F.2d at 1385 & n. 7. Congress failed to incorporate such a statement in the Act.

The legislative history indicates that Congress was deeply divided along partisan lines on the issue of retroactivity. Senators Danforth and Kennedy issued a joint "Interpretive Memorandum" relating to the Act. *See* 137 Cong.Rec. § 15483–85 (daily ed. October 30, 1991). The Senators agreed on all points except the issue of retroactivity. Senator Danforth expressed the intent not to apply the Act retroactively. *Id.* at S15483. Other Republican Senators, such as Senator Dole, *id.* at S15478, and Senator Murkowski, *id.* at S15493, concurred with Senator Danforth. Senator Kennedy expressed the view that the bill was intended to apply retroactively,

---

3. *Compare Wagner Seed Co. v. Bush,* 946 F.2d 918, 924 (D.C.Cir.1991) *and Simmons v. Lockhart,* 931 F.2d 1226, 1230 (8th Cir.1991) *and Alpo Petfoods, Inc. v. Ralston Purina Co,* 913 F.2d 958, 963–64 n. 6 (D.C.Cir.1990) *and DeVargas,* 911 F.2d at 1384 (holding that the *Georgetown* presumption is the better rule) *with United States v. Peppertree Apartments,* 942 F.2d 1555, 1560–61 (11th Cir.1991) *and FDIC v. Wright,* 942 F.2d 1089, 1095 n. 6 (7th Cir.1991) and *Northern Mariana Islands v. Kawano,* 917 F.2d 379, 381–82 (9th Cir.1990), *cert. denied,* — U.S. —, 111

S.Ct. 1116, 113 L.Ed.2d 224 (1991) *and Kruso v. International Tel. & Tel. Co.,* 872 F.2d 1416, 1424–25 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990) *and Leake v. Long Island Jewish Med. Ctr.,* 695 F.Supp. 1414, 1415–18 (E.D.N.Y.1988), *aff'd* 869 F.2d 130, 131 (2d Cir.1989) (holding that the *Bradley* presumption is the better rule). *See generally Ayers v. Allain,* 893 F.2d 732, 755–56 (5th Cir.1990), *aff'd en banc,* 914 F.2d 676 (5th Cir.1990) (applying the Restoration Act retroactively).

citing *Bradley* and its progeny with approval. *Id.* at S15485. Given this division of opinion on retroactivity, the legislative history fails to provide the Court with an expression of "clear congressional intent."

## IV.

From a policy perspective, the Court is troubled by Congress' drafting of the Act, particularly Congress' failure to directly address and resolve the retroactivity issue. Senator Kennedy recognized that "[i]t will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment." *Id.* Congressional indecision on the retroactivity issue has forced both the federal courts and litigants to expend valuable time and resources resolving an issue that is wholly unrelated to the merits of civil rights cases.[4] The burdens placed on the judicial system "frustrate[ ] the early and orderly resolution of issues which should demand greater attention—compensating the victim[ ] or vindicating accused commercial entities." *In re Air Crash Disaster at Stapleton Int'l Airport,* 720 F.Supp. 1445, 1454 (D.Colo.1988).

Although judges do not act as policymaking authorities, courts are called upon to manage cases that arise under federal statutes. The trial judge's perspective offers important insight into the clarity of legislation and the problems that ambiguities create for judicial administration. Accordingly, it behooves judges to call to the attention of Congress inadequacies in statutes that frustrate the efficient resolution of litigation.

Recently, the President's Council on Competitiveness issued a series of recommendations for improving the legal system. *See* Agenda for Civil Justice Reform in America, A Report from the President's Council on Competitiveness (August 1991) ("Agenda"). The Agenda recognized that "poorly drafted federal statutes" shared

part of the responsibility for increasing litigation. *Id.* at 9. The Agenda specifically recommended that all legislative proposals should be reviewed against a "litigation hazards" checklist. *Id.* Adherence to such a checklist would reduce the need for parties to litigate issues of statutory construction collateral to the merits of their cases, conserve judicial and litigants' resources, and promote more expedient resolution of disputes.

When reviewing proposed legislation, Congress specifically should address the following items in order to reduce the need for collateral litigation:

1) clear statements of legislative intent;

2) definitions of key terms;

3) a statute of limitations;

4) a statement of court jurisdiction and removability;

5) the conditions and procedures of acquiring personal jurisdiction;

6) listing of available types of relief;

7) the conditions for attorney's fee awards, if authorized;

8) whether a private cause of action is authorized;

9) whether state law is preempted;

10) whether the proposed legislation affects or changes existing federal legislation and in what way;

11) whether exhaustion of administrative remedies is required and whether any administrative proceedings are to be formal or informal;

12) whether private arbitration or other dispute resolution agreements remain viable under the legislation's relief and enforcement provisions; and

13) *whether the legislation is to be applied retroactively.*

---

4. For a discussion of the deep divisions in Congress on the retroactivity issue, see S. Poor, *Rights Act's Retroactivity Still Disputed,* Nat'l L.J., January 27, 1992, at 19, 22–23. For a discussion of the impact of Congress' failure to resolve the retroactivity issue on the courts, see

*Legal Flurry: Court Cases Explore Whether the Civil–Rights Law is Retroactive,* Wall St.J., January 28, 1992, at 1; J. Groner, *New Rights Act Ducks Crucial Issue,* Legal Times, Dec. 9, 1991, at 1, 18–19.

One such checklist has been proposed by the Report of the Federal Courts Study Committee, at 91–92 (April 2, 1990).[5]

Because Congress failed to deal squarely with the retroactivity issue, courts have spent and will continue to spend considerable time resolving this issue. The need to commit judicial and litigants' resources to a matter that Congress could have resolved by more precise legislative drafting frustrates efforts to reform and streamline the American legal system.

### V.

### ORDER

ACCORDINGLY, it is ordered that:

1) Plaintiff's Motion to Amend Complaint and Try This Matter by Jury, filed December 18, 1991, is hereby DENIED.

2) The Civil Rights Act of 1991 does not apply retroactively to cases pending at the time of enactment.

---

**5.** The Federal Courts Study Committee is a congressionally mandated committee. The committee's diverse membership includes judges and Congressmen. The committee conducted a fifteen-month study of the problems facing the federal courts, and its findings carry significant weight.