958 F.2d 376
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles J. EVANS, Plaintiff-Appellant
v.
SUPERIOR HEALTH SERVICES, INC.; Yuma Nursing Center;
Ser-Jobs For Progress Inc.; Yuma County JTPA
Administration, Defendants-Appellees.
 No. 90-16608.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1992.
Decided March 18, 1992.
 
 Before CHOY, FARRIS and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 
 2
 Charles J. Evans brought suit against defendants as a result of his termination from a job as a maintenance worker for defendant Yuma Nursing Center ("YNC"). Evans received his position at YNC through the Job Training Partnership Act of 1982, 29 U.S.C. §§ 1501-1781 ("JTPA"). The JTPA funds state-created programs for the youth and disadvantaged established with labor markets so-called service delivery areas ("SDAs"). Under the Act, a private industry council, in coordination with local government within each SDA, submits proposed job programs to the governor. The governor then prepares a state plan that is forwarded to the Secretary of Labor for approval, who in turn disburses appropriations pursuant to a formula set out in the Act.
 
 
 3
 The Arizona Department of Economic Security ("DES") established Yuma County as an SDA and entered into an intergovernmental agreement with Yuma County in which it agreed to administer the program within its boundaries. The county subcontracted the administration of the JTPA to defendant SER-Jobs for Progress, Inc. ("SER"), which was the initial contact for Evans.
 
 
 4
 SER referred Evans to YNC, where he was interviewed and hired by Edwin Schmid, administrator of YNC. On August 13, 1986, SER and YNC entered into a contract which provided that YNC would employ and train Evans in exchange for a partial reimbursement of his salary. Evans began work at YNC on August 21, 1986. Until Evans's discharge, Schmid rated his performance as good on performance reports submitted to SER.
 
 
 5
 Schmid terminated Evans's employment at YNC as a result of an incident on September 19, 1989. Defendants contend that Tina Holtz, a co-worker at YNC, discovered Evans in a storage room under circumstances indicating that he had been asleep. Evans swears by affidavit that he was in the room repairing a resident's wheelchair. Plaintiff has not disputed, however, that when he was discovered the storage room was locked, the lights were out, and he was in a half-prone position with his glasses removed. According to the personnel policy manual provided Evans when he was hired, sleeping on duty could result in immediate discharge.
 
 
 6
 Holtz reported the incident to Schmid on September 23rd. Schmid told Evans he must resign or he would be terminated. Evans asked for an opportunity to confront Holtz about her allegation, and when Schmid denied this request, Evans signed the resignation letter.
 
 
 7
 Evans wrote to Schmid asking for a review of his termination under the grievance procedure in the YNC personnel policy manual, however Schmid ignored this request because he thought these procedures were unavailable to probationary employees like Evans. On December 17, 1986, Evans contacted Hector Acosta, Director of SER, and requested a grievance hearing. Acosta met with Evans, heard his complaints, and referred Evans's grievance to Yuma County's JTPA administration office. On May 20, 1987, the JTPA administration office instructed Acosta to conduct a hearing with an impartial hearing officer as soon as possible. A hearing was held on June 7th before an EEO Labor Relations Specialist. The hearing officer concluded that Evans's termination should stand.
 
 
 8
 Evans then complained to the State Attorney General and Senator John McCain about his termination. As a result, Yuma County's JTPA office attempted to conduct another hearing on February 18, 1988, but Evans refused to participate and requested a hearing on the state level. A DES appeal was heard on April 29, 1988 where the hearing officer found that Evans's termination ultimately complied with JTPA rules and regulations.
 
 
 9
 Evans brought suit in federal district court, alleging that the defendants' handling of his grievance violated the JTPA and thus deprived him of constitutional due process guarantees. Evans also argues that his termination was racially motivated. The district court granted the defendants' separate motions for summary judgment and Evans appealed.
 
 II. DISCUSSION
 
 10
 A. Compliance With Rule 56(e).
 
 
 11
 Evans argues that several affidavits that defendants submitted with their motion for summary judgment were defective under Rule 56(e) of the Federal Rules of Civil Procedure because they did not state that the affiants had personal knowledge of the facts stated therein and that they were competent to testify to the fact at trial.
 
 
 12
 The rule is that "Rule 56(e)'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves." Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir.1990). Under this standard, the affidavits submitted in this case were not defective because all contained sufficient indicia of the affiants' personal knowledge of the facts alleged and their competence to testify. See also Lockwood v. Wolf Corp., 629 F.2d 603, 611 (9th Cir.1980); Norman v. Levy, 756 F.Supp. 1060, 1062 n. 1 (N.D.Ill.1990).
 
 
 13
 Schmid's affidavit described his job at YNC and recounted the details of the incident that led to Evans's termination. He explained that after receiving Holtz's report he concluded that Evans had been sleeping on the job and that he believed that this was a ground for dismissal. All of this information was based on firsthand knowledge and one can easily infer from the affidavit that Schmid was competent to testify at trial.
 
 
 14
 Acosta's second affidavit[1] explained that he had had difficulties responding to Evans's complaint because Evans had insisted on receiving back pay from YNC, something SER could not provide. Acosta also stated that he had no reason to believe that the defendants had discriminated against Evans on the basis of his race and that any delay in processing his grievance was not the product of any conspiracy. Acosta described his meeting with Evans and explained that he referred Evans to the local SDA because the Yuma County JTPA was more capable of handling Evans's complaint than SER. Finally Acosta described the steps he took to obtain a hearing for Evans. These facts provide a sufficient basis to infer that Acosta had firsthand knowledge of the facts he stated and that he was competent to testify.
 
 
 15
 Holtz's affidavit stated that she was employed by YNC and recounted what she saw when she entered the storage room. She also stated that she reported the incident to Schmid. There is no question that she had personal knowledge of these facts and that she was competent to testify to the events she described.[2]
 
 
 16
 Edith Snyder, the successor administrator to Schmid at YNC, also made out an affidavit that was submitted by the defendants. It explained the management service agreement that exists between Superior Health Services ("Superior) and YNC. She explained that the agreement makes Superior responsible for the management and administration of YNC. Snyder is competent to testify about her personal knowledge regarding the relationship between YNC and Superior.
 
 
 17
 In sum, the affidavits were not defective in any substantive respect and Evans's motion to strike was properly denied.
 
 
 18
 B. Due Process Claims.
 
 
 19
 The JTPA requires the state entities designated to receive grant money and administer the job training plan to provide a grievance procedure for program participants like Evans. 28 U.S.C. § 1554(a); see also 29 U.S.C. § 1513. The JTPA also requires employers receiving financial assistance to provide a grievance procedure relating to the terms and conditions of employment. 29 U.S.C. § 1554(b). Department of Labor regulations promulgated pursuant to section 144 of the Act require the governor to maintain a state-level grievance procedure, and ensure that grievance procedures are established by SDA-level grant recipients. 20 C.F.R. § 629.52(b)(1). Employers may choose between implementing their own grievance procedure or simply referring a participant to the SDA and state level grievance procedures, but they must inform participants of which course to follow. 20 C.F.R. § 629.53(b).
 
 
 20
 Evans alleges that he was denied due process because YNC failed to inform him of his grievance rights under the JTPA and that YNC and SER delayed in conducting a JTPA hearing on his grievance.[3] These claims are not persuasive.
 
 
 21
 First, although YNC failed to inform him of his grievance rights, Evans discovered those rights on his own and invoked their protections. Had YNC failed to inform Evans of these rights and Evans failed to take advantage of these rights he would have been denied due process, but such is not the case here. Second, Evans received at two full hearings before impartial adjudicators, one at the state level and one at the federal level. In both cases the adjudicators found that his termination was proper.[4] Finally, the Supreme Court has held that conclusory allegations that the employer took too long to conclude post-termination proceedings "does not state a claim of a constitutional deprivation." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547 (1985).[5] Thus the delays in convening the hearings did not deprive Evans of his due process rights.
 
 
 22
 C. Summary Judgment on the Race Discrimination Claim.
 
 
 23
 Evans argues that YNC terminated him on account of his race in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000-d (Title VI), and 29 U.S.C. § 1577.[6] The district court granted summary judgment in favor of all defendants on all of these claims.
 
 
 24
 The district court held that the Supreme Court's decision in Patterson v. McClean Credit Union, 485 U.S. 164, 176 (1989) barred Evans's § 1981 claim because it involved conduct occurring after contract formation. This holding is problematic for two reasons. First, Congress expressly has overruled Patterson in the Civil Rights Act of 1991 which became effective November 21, 1991. Some courts have held that the Act applies retroactively to claims pending when it was passed. See Graham v. Bodine Elec. Co., 1992 WL 14033 (N.D.Ill. Jan. 23, 1992); Saltarikos v. Charter Mfg. Co., 1992 WL 18789 (E.D.Wis. Jan. 8, 1992); Stender v. Lucky Stores, Inc., 1992 WL 2904 (N.D.Cal. Jan. 7, 1992); Mojica v. Gannett Co., 779 F.Supp. 94 (N.D.Ill.1991). But see Doe v. Board of County Comm'rs, 1992 WL 19749 (S.D.Fla. Jan. 30, 1992); Burchfield v. Derwinski, 1992 WL 17827 (D.Colo. Jan. 29, 1992); Khandelwal v. Compuadd Corp., 1992 WL 5953 (E.D.Va. Jan. 15, 1992). Second, Patterson did not address the question of whether § 1981 applies to employees terminated for discriminatory reasons. We avoid both of these questions by finding that even if Evans has a valid § 1981 claim, it cannot survive summary judgment. The standards for a prima facie cause under § 1981 are the same as those under Title VII or Title VI. Gay v. Waiters' & Dairy Lunchmen's Union, 694 F.2d 531, 538-39 (9th Cir.1982). As discussed below, Evans's claim fails under these standards.
 
 
 25
 Summary judgment in favor of the Yuma County JTPA Administrator and SER was proper because neither defendant had control or authority over the employment relationship between Evans and YNC, and thus they cannot be held liable either directly or under the principles of respondeat superior for YNC's manager's decision to discharge Evans. See Allen v. Denver Public School Bd., 928 F.2d 978, 983 (10th Cir.1991) (liability must be predicated on affirmative link between actor and discriminatory conduct); Watson v. Fraternal Order of Eagles, 915 F.2d 235, 244 (6th Cir.1990) (lack of close relationship between club's discriminatory actions and club's governing body preclude liability). The employment contract was between YNC and Evans, and SER and the Yuma County JTPA administration were not parties to this contract.[7]
 
 
 26
 Summary judgment in favor of the remaining defendants is appropriate if the nonmoving party fails to establish a genuine issue of material fact on an essential element of its case on which it will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Moreover, if the facts suggest that the nonmoving party's claim is implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to demonstrate that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); see also California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987), cert. denied, 484 U.S. 1006 (1988).
 
 
 27
 In this case, summary judgment is appropriate because Evans has failed to make out a prima facie case of race discrimination, a burden that he would have at trial. The plaintiff's burdens of production and persuasion in disparate treatment employment discrimination cases brought under Title VII apply to similar claims brought under Title VI. NAACP v. Medical Center, Inc., 657 F.2d 1322 (3d Cir.1981); cf. Smith v. Barton, 914 F.2d 1330, 1336 (9th Cir.1990) (courts look to Title VII to determine appropriate rules under Title VI), cert. denied, 111 S.Ct. 2825 (1991). In Title VII cases, the plaintiff has several burdens. First, the plaintiff must establish a prima facie case of deliberate discrimination. Second, if the plaintiff proves a prima facie case, the defendant must articulate some legitimate, nondiscriminatory business reason for its action. If the defendant does this, the plaintiff must show that the legitimate reasons offered by the defendant were not its true reasons, but were actually a pretext for illegal discrimination. The ultimate burden of persuasion remains at all times with the plaintiff. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981).
 
 
 28
 In this case, Evans failed to prove a prima facie case of racial discrimination. In this circuit, the plaintiff makes out a prima facie case by demonstrating three elements: (1) that he was within a protected class; (2) that he was doing his job well enough to rule out the possibility that he was fired for inadequate performance; and (3) that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills. Sengupta v. Morrison-Knudsen Co., 804 F.2d 1072, 1075 (9th Cir.1986). Evans obviously meets the first element, and his own affidavit substantiates the second. He has not, however, proven the third element, namely that he was replaced by someone with similar qualifications.[8]
 
 
 29
 Moreover, even if Evans could make out a prima facie case, the evidence is insufficient as a matter of law to permit a reasonable jury that he was discharged for racially discriminatory reasons. See Palucki v. Sears Roebuck & Co., 879 F.2d 1568, 1570 (7th Cir.1989). Schmid discharged Evans because he believed, based on Holtz's report, that Evans was sleeping on the job. Schmid found that Holtz was a trusted employee whose report he gave credibility. Perhaps it would have been more prudent for Schmid to take other disciplinary action rather than dismissing Evans or to allow Evans to confront Holtz about the allegation,[9] but his actions do not smack of racial discrimination. Nolan v. Cleland, 686 F.2d 806, 812 (9th Cir.1982) (subjective decision not discriminatory absent probative evidence creating an issue of material fact). Schmid believed, perhaps erroneously, that Evans was a probationary employee whom he could discharge for any reason and that the employees manual also give him the authority to discharge an employee for sleeping. Hearn v. R.R. Donnelly & Sons Co., 739 F.2d 304, 308 (7th Cir.1984) (court will not speculate about employer's motives where no "discernible evidence of discrimination" exists), cert. denied, 469 U.S. 1223 (1985). There is no evidence of racial animus in the record. Schmid hired Evans and gave him positive work evaluations. One would therefore assume, without contrary evidence, that Schmid was not racially prejudiced. See Harris v. Group Health Ass'n, Inc., 662 F.2d 869, 872 (D.C.Cir.1981). One cannot infer that an employer discriminated against a black employee merely because the employer is white. Gay, 694 F.2d at 554 n. 18. Evan's only evidence of racial discrimination is that he is black.[10] Evans would have the burden of proving at trial that the reason for his discharge was a pretext for discrimination, and with the evidence he presented he would be unable to do so.
 
 
 30
 D. Conspiracy Claim.
 
 
 31
 The district court correctly concluded that Evans could not make out a claim under 42 U.S.C. § 1985(3)[11] against the defendants for conspiring to violate his constitutional rights. In this circuit, Evans would have to show both an agreement or meeting of the minds among the defendants to violate his constitutional rights and that the conspiracy actually deprived him of his constitutional rights. Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir.1989). Evans relies solely on conclusory statements in his complaints to support his claim. He offers no circumstantial evidence that the defendants conspired in any way to deprive him of his due process rights or his equal protection rights. Instead, he merely asserts that the record will demonstrate that the defendants did so. Such bare allegations are insufficient to support a conspiracy claim under § 1985(3).
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Acosta's first affidavit contained a recital that he was competent to testify at trial and that he had personal knowledge of the facts contained in his affidavit
 
 
 [2]
 Even if Holtz's affidavit was defective, the district court could have relied upon her sworn testimony at the state DES hearing, which Evans introduced into the record
 
 
 [3]
 It is not necessary to reach defendants' argument that Evans was not entitled to a hearing as a probationary employee because, assuming that the JTPA applies, Evans was not denied due process
 
 
 [4]
 Evans argues that these hearings were deficient because the officers did not review all of his claims but a review of the record shows otherwise
 
 
 [5]
 Evans argues that summary judgment was not appropriate because the record does not establish whether he was a trainee or a maintenance supervisor. This fact, Evans argues, is essential to determining whether the JTPA applies, but we assume that it does apply and find that Evans was not deprived of his rights
 
 
 [6]
 Section 1577 is the JTPA analog of Title VI
 
 
 [7]
 Likewise, because the conspiracy claim fails, SER and the Yuma County JTPA Administration cannot be liable on the theory that the conspired with YNC to deprive Evans of his constitutional rights
 
 
 [8]
 Evans does make the allegation that he was replaced by a "white male with similar qualifications," but he failed to offer any evidentiary support for this assertion as required by Rule 56(e)
 
 
 [9]
 The two hearing officers obviously considered these possibilities in the grievance hearings and rejected them
 
 
 [10]
 Evans's allegation that he was hired in order to persuade another employee to quit, even if true, does nothing to suggest that YNC discriminated against him on the basis of his race nor does it prove that a conspiracy existed between SER and YNC to deprive him of his constitutional rights
 
 
 [11]
 This section states in relevant part:
 If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of conspirators.
 42 U.S.C. § 1985(3).