**Dorothy S. STEINLE, Plaintiff,**

v.

**The BOEING COMPANY and Dudley Morris, Defendants.**

No. 90–1337–C.

United States District Court,
D. Kansas.

Feb. 26, 1992.

James S. Phillips, Jr., Phillips & Phillips, Chartered, Wichita, Kan., for plaintiff.

Mary K. Babcock, Gloria G. Flentje, Mikel L. Stout, Foulston & Siefkin, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case presents the thorny issue of whether the Civil Rights Act of 1991, which was signed by President Bush on November 21, 1991, applies to the plaintiff's Title VII claims which were pending at the time the Act became law. Steinle filed this case on July 11, 1990. The discriminatory and retaliatory conduct which Steinle alleges occurred prior to November 21, 1991. The court concludes that the Civil Rights Act of 1991 does not apply to Title VII cases pending at the time the Act became law.

### Facts and Procedural History

On October 4, 1991, the pretrial conference order was filed. Steinle alleges that the defendants sexually discriminated against her and that the defendants' actions constitute violations of Title VII, the Kansas Act Against Discrimination, and the Equal Pay Act. Specifically, Steinle contends that she was "discriminatorily denied placement in a Professional and Administrative status because of her sex, both as to Analyst 4 and Planner 4 assignments in violation of Title VII and the Kansas Act Against Discrimination." Steinle also alleges that the defendants "retaliated against her because she pursued internal company complaints regarding conduct she contended to be sex-based discrimination." Steinle also asserted a pendent claim for the tort of outrage against her supervisor, Dudley Morris, and Boeing vicariously. A final pretrial status conference was scheduled for February 10, 1992. The trial was set to begin on February 25, 1992.

On February 4, 1992, this court entered an order granting the defendant's motion for partial summary judgment on Steinle's claims for the tort of intentional or reckless infliction of emotional distress. (Dk. 93).

On February 6, 1992, Dorothy S. Steinle filed a motion to amend the pretrial order. In that motion, Steinle requests that she be permitted to insert the following paragraph at the conclusion of her contentions at page 14 of the pretrial order:

As regards each of the claims asserted under Title VII of the Civil Rights Act of 1964 Plaintiff asserts that she has a cause of action arising under the Civil Rights Act of 1991. Plaintiff seeks compensatory damages for emotional pain, mental anguish, inconvenience, embarrassment and humiliation pursuant to Section 102(a)(1) and (b)(3) of said Act.

Steinle also requests permission to add a part six to her "Theories of Recovery":

6. Retaliation and Sex Discrimination claim arising under the provisions of the Civil Rights Act of 1991.

Finally, Steinle seeks permission to amend page 33 of the pretrial order to provide as

follows: "Trial will be to the jury as to all of plaintiff's claims."

Steinle "seeks to recover damages for emotional stress, mental anguish, embarrassment, humiliation and inconvenience pursuant to Section 102(a)(1) and (b)(3) of the recent Civil Rights Act of 1991." Steinle contends that the Civil Rights Act of 1991 must be given retroactive application. Steinle acknowledges that the issue of whether the Civil Rights Act of 1991 should be applied retroactively has not yet been resolved. Steinle, however, directs the court's attention to three cases which have given retroactive application to the Act.

After receiving Steinle's motion, the court reviewed the Act and cases which had considered the retroactivity of the Act. In the defendants' response to Steinle's motion to amend the pretrial, which was filed shortly before the pretrial status conference, the defendants contended that the Civil Rights Act should not be applied retroactively. The defendants' brief attempted to counter arguments favoring retroactive application of the Act.[1]

At the pretrial status conference, the court heard oral argument from each of the parties. Following oral argument, the court, due to the fact that trial was set to begin in a short time, orally announced its conclusion that the Act does not apply retroactively to pending cases and denied Steinle's motion to amend the pretrial order.[2] The court indicated that it would issue a written order at a later time. This order constitutes the court's conclusions of law.

Civil Rights Act of 1991

■ On November 21, 1991, President Bush signed into law the Civil Rights Act of 1991 (Act). One of the stated purposes of the Act is "to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace." Civil Rights Act of 1991 § 3(1). Another purpose of the Act is "to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil right statutes in order to provide adequate protection to victims of discrimination." Civil Right Act of 1991 § 3(4).[3]

Section 102 provides in pertinent part:
(a) Right of Recovery.

(1) Civil Rights. In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e–2 or 2000e–3), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent....

The issue presented by Steinle's motion to amend the pretrial order is whether the Civil Rights Act of 1991 applies to cases pending at the time of its enactment. Unfortunately, the Civil Rights Act does not

---

1. The court had read each of the cases cited in the defendants' brief.

2. The defendants' motion to amend the pretrial order to reflect that Steinle was only entitled to a jury trial on her Equal Pay Act claims was granted.

3. The stated purpose of the Civil Rights Act of 1990, as originally introduced in the 101st Congress, was to overturn five Supreme Court decisions: *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989); *Lorance v. AT & T*

*Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *Wards Cove Packing Co. v. Antonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). After the Civil Rights Act of 1990 was vetoed, but prior to the Civil Rights Act of 1991's passage, the Supreme Court decided two more cases which impacted civil rights litigation: *West Virginia Univ. Hosp. Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *EEOC v. Arabian Am. Oil Co.,* —— U.S. ——, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991). The Civil Rights Act of 1991 includes provisions that legislatively overrule these cases.

include any provision expressly indicating whether it should be applied to pending cases. Since its enactment, several courts have confronted the issue of whether the Act applies "retroactively" to pending cases. The results have not been uniform. Some courts have concluded that the statute should be applied retroactively.[4] Other courts have concluded that the Act should only be applied prospectively.[5]

Plain Language of the Act

The starting place of any analysis is the Act itself. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) ("The starting point for interpretation of a statute 'is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language

must ordinarily be regarded as conclusive.' ") (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Section 402 of the Act provides:

(a) IN GENERAL. Except as otherwise provided, this Act and the amendments made by this Act shall take effect upon enactment.

(b) CERTAIN DISPARATE IMPACT CASES. Notwithstanding any other provision of this Act, nothing in this Act shall apply to any disparate impact case for which a complaint was filed before March 1, 1975, and for which an initial decision was rendered after October 30, 1983.[6]

---

**4.** *See Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal.1992) (Civil Rights Act of 1991 applicable to plaintiff's claims); *Joyner v. Monier Roof Tile, Inc.,* 784 F.Supp. 872 (S.D.Fla.1992) (granting plaintiff's motion for leave to amend her complaint to seek compensatory and punitive damages, attorneys' fees, and a trial by jury in a Title VII case); *La Cour v. Harris County,* No. H–89–1532, 1991 WL 321020, 1991 U.S.Dist. LEXIS 19223 (S.D.Tex. December 6, 1991) (plaintiff's motion for jury trial under Civil Rights Act of 1991 for Title VII claims granted); *Mojica v. Gannett Company, Inc.,* 779 F.Supp. 94 (N.D.Ill.1991) (Civil Rights Act of 1991 applicable to plaintiff's claims); *Graham v. Bodine Elec. Co.,* 782 F.Supp. 74 (N.D.Ill.1992) (Act applies retroactively); *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991) (granting plaintiff's motion for a jury trial of Title VII claims); *Watkins v. Bessemer State Technical College,* 782 F.Supp. 581 (N.D.Ala.1992); *Davis v. Tri–Mack Distributions, Inc.,* No. LR–C–89–912, 1991 WL 316891, 1991 U.S.Dist. LEXIS 19380 (E.D.Ark. December 18, 1991) (Act applied to plaintiff's request for attorney's fees); *Bristow v. Drake Street, Inc.,* No. 87–C–4412, 1992 WL 14262, 1992 U.S.Dist. LEXIS 499 (N.D.Ill. January 21, 1992) (Under *Bradley* presumption, Act applied retroactively); *see also Bracey v. Helene Curtis, Inc.,* 780 F.Supp. 568, 570 n. 3 (N.D.Ill.1992) (court assumes Civil Rights Act of 1991 applies to the plaintiff's case, but because new law did not change the elements of a Title VII action, under the facts of that case no effect on the outcome).

**5.** *Burchfield v. Derwinski,* 782 F.Supp. 532 (D.Colo.1992) (Civil Rights Act of 1991 does not apply to cases pending prior to date of enactment; motion to amend complaint and try matter to a jury denied); *Simons v. Southwest Petro–Chem, Inc.,* No. 90–2243–V, 1992 WL 25218 (D.Kan. January 22, 1992) (Civil Rights Act of

1991 does not apply retroactively); *Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991) (Act not applied retroactively to pending federal employee cases); *Maddox v. Norwood Clinic, Inc.,* 783 F.Supp. 582 (N.D.Ala.1992); *James v. American International Recovery, Inc.,* No. 1:89–CV–321–RHH, 1991 WL 281734, 1991 U.S.Dist. LEXIS 18408 (N.D.Ga. December 3, 1991) (Act does not apply to cases arising before the effective date of the Act); *High v. Broadway Industries, Inc.,* No. 90–1066–CV–W–3, 1992 WL 33860, 1992 U.S.Dist. LEXIS 446 (W.D.Mo. January 7, 1992) (denying plaintiff's motion for leave to file second amended complaint); *Mitchell v. Secretary of Commerce,* No. 82–3020 (CRR), 1992 WL 10509, 1992 U.S.Dist. LEXIS 147 (D.D.C. January 10, 1992) (following *Van Meter* ); *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077 (E.D.Va.1992); *Johnson v. Rice,* 2:85–CV–1318, 1992 WL 16284, 1992 U.S.Dist. LEXIS 830 (S.D.Ohio January 24, 1992) (compensatory damages provision only applied prospectively); *Doe v. Board of County Comm'rs,* 783 F.Supp. 1379 (S.D.Fla.1992); *Hansel v. Public Service Co.,* 778 F.Supp. 1126 (D.Colo.1991) (Civil Rights Act of 1991 does not apply to pending cases), *but see Great American Tool And MFG. Co. v. Adolph Coors Co., Inc.,* 780 F.Supp. 1354 (D.Colo.1992) (In *Hansel,* the court held that the Act does not apply retroactively to "pending cases." Because the plaintiff's case was filed on November 25, 1991, four days after the Act became law, "there is no issue of retroactive application.")

**6.** Section 402(b) was adopted to prevent any possible retroactive application of the Act with respect to the Supreme Court's decision in *Wards Cove Packing Co., Inc. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). *Wards Cove* is legislatively overruled by § 105 of the Act. *See Joyner v. Monier Roof Tile, Inc.,*

The phrase shall "take effect" in § 402(a) presumably means that the Act will be in force or go into operation after its enactment. *See Black's Law Dictionary* 1454 (6th ed. 1990). This language neither compels nor necessarily precludes application of the Act to pending cases.

Several courts have noted that failure to give retroactive application to the Act makes § 402(b) mere surplusage; if the Act were only to prospectively, inclusion of § 402(b) would serve no purpose. *See, e.g., Stender,* 780 F.Supp. at 1304 (N.D.Cal. 1992). The Supreme Court has commented that it is hesitant "to adopt an interpretation which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency,* 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988).

In addition to § 402(b), other portions of the Act also prohibit retroactive application. Section 109(c), which pertains to employment in a foreign country, states that "[t]he amendments made by this section shall not apply with respect to conduct occurring before the date of the enactment of this Act." Similarly, section 116, states that "[n]othing in the amendments made by this title shall be construed to affect court-ordered remedies, affirmative action, or conciliation agreements, that are in accordance with the law."

While the existence of these sections possibly suggest that the Act is to be applied retroactively to pending cases, other por-

tions of the Act suggest that it does not apply to pending cases. For example, § 110(b), which establishes a Technical Assistance Training Institute, states that § 110 "shall take effect on the date of enactment of the Act." Obviously, because § 110 establishes a new training institute, that portion of the Act can only be prospectively. The phrase "shall take effect on the date of enactment" is used in § 402(a). If the phrases have the same meaning, one possible inference is that the Act was intended to only apply prospectively.[7]

Another section of the Act which may suggest that the Act does not apply to pending cases is § 102. Under § 102(a)(1) a "complaining party" may seek compensatory and punitive damages. "Complaining party" is defined as "the Equal Employment Opportunity Commission, the Attorney General, or a person who *may* bring an action or proceeding under title VII...." Civil Rights Act of 1991 § 102(d)(1)(A). Under one possible reading, the Act may only apply to cases filed after November 21, 1991. *See Van Meter v. Barr,* 778 F.Supp. 83 (D.D.C.1991);[8] *see also Hansel v. Public Service Co.,* 778 F.Supp. 1126 (D.Colo.1991).

While the language of the Act can reasonably support arguments both for and against its application to pending cases, this court does not believe the Act unambiguously compels one interpretation over the other. Most courts interpreting the Act have concluded that the Act does not clearly evidence whether Congress intend-

---

784 F.Supp. 872, 875 n. 7 (S.D.Fla.1992) (discussing the legislative history of § 402(b)). Steinle's Title VII claims are apparently not based upon a disparate impact theory.

**7.** In *Stender,* the court stated that "[a]lthough § 110(b) is redundant, it is not inconsistent with the court's determination that the 1991 Civil Rights Act should be retroactively applied." 780 F.Supp. 1302, 1304 n. 3.

**8.** The only issue in *Van Meter* was whether the Act applied retroactively to an existing Title VII case involving a federal agency. The court noted that a Title VII suit against a private employer is not identical to a Title VII suit against the United States.

[I]n Title VII cases against the federal government, the United States has conditioned the waiver of its sovereign immunity on the re-

quirement that the plaintiff first raise his or her discrimination grievances with the agency.... Accordingly, to allow Title VII plaintiffs simply to tack claims for compensatory damages onto complaints already pending in U.S. District Courts would, as a practical matter, deprive the United States of its opportunity to resolve claims for monetary damages at the administrative level, and would, as a legal matter, impermissibly broaden the jurisdiction of the federal courts to include claims that, contrary to the limited scope of the federal government's waiver of sovereign immunity in this area, had not followed the administrative track still required by Title VII as a perquisite to judicial action in federal employment cases.

778 F.Supp. at 85.

ed the Act to apply to existing cases.[9] *In Joyner,* the court concluded that "the presence of section 402(b) and 109 demonstrates, at most, that where Congress wished to express any intent concerning the application of the Act, it took the initiative to state so specifically." *Id.,* at 876. *See Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077 (E.D.Va.1992); *Simons v. Southwest Petro–Chem, Inc.,* No. 2243–V, 1992 WL 25218 (D.Kan. January 22, 1992).

This court concludes that the language of the Act does not evidence a clear congressional intent either for or against its application to pending cases.

Legislative History

In the past, this court has expressed its misgivings about reliance upon legislative history as a means of determining congressional intent. *See Foster v. Lawrence Memorial Hospital,* No. 91–1151–C, 1992 WL 24099, 1992 U.S.Dist. LEXIS 1368 (D.Kan. January 8, 1992). While the legislative history of a statute may sometimes be instructive, reliance on certain types of "legislative history" is often a dicey proposition at best. Courts should carefully scrutinize whether the legislative history evidences Congress' intent or is merely the expression of one person's personal viewpoint injected into the record in an effort to sway the courts in a manner that person was unable to persuade the legislature. The Civil Rights Act of 1991 is a paradigmatic example of why reliance upon certain types of legislative history is not always sound.[10]

The starting point of the legislative history of this Act is the Civil Rights Act of 1990. The Civil Rights Act of 1990 specifically included provisions mandating, in varying degrees, retroactive application of several of its provisions. *See* H.R. No. 856, 101st Congress, 2nd Sess., Sec. 15 (1990). President Bush vetoed that bill and an at-

tempt to override the veto failed. *Joyner,* 784 F.Supp. at 877. In *Joyner,* the court commented that "[b]ecause the Act of 1991 contains none of the provisions found in the 1990 legislation, one could conclude that the statute was left purposefully vague in an attempt to secure passage and enactment." *Id.*

The legislation which ultimately emerged from Congress was apparently the product of compromise. Many of the statements of the senators and congressmen which discuss the retroactivity of the Act are perhaps best viewed as attempts to create a "legislative history" which buttresses their own personal view. *See Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077, 1079 (E.D.Va.1992) (members of Congress, primarily based upon party affiliation, espoused view in favor or against retroactive application). One court has commented that "[t]he congressional 'debates' were, with few exceptions, hardly more than a series of declarations and counterdeclarations, which often addressed "retroactivity" without ever defining that term or focusing on the crucial, separate problem at issue ..." *Van Meter,* 778 F.Supp. at 84.

On October 30, 1991, Senator John Danforth and Senator Edward Kennedy, the principal sponsors of the Act, issued a joint "interpretative memorandum" in which the Senators agreed on every aspect but one: the retroactive application of the Act to pending cases. Senator Danforth suggested that based upon his reading of Supreme Court precedent, the Act, in the absence of an explicit provision to the contrary, would not apply retroactively. 137 Cong.Rec. S15,483 (daily ed. Oct. 30, 1991). Conversely, Senator Kennedy, suggested that the courts ordinarily "apply newly enacted procedures and remedies to pending cases." 137 Cong.Rec. S15,485 (daily ed. Oct. 30,

---

**9.** Some courts have viewed certain portions of the Act as a clear indication that the Act should be applied retroactively. *See, e.g., Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal. 1992).

**10.** The Act itself recognizes the dangers of reliance upon certain types of legislative history. Section 105(b) provides:

No statements other than the interpretive memorandum appearing at Vol. 137 Congressional Record S 15276 (daily ed. Oct. 25, 1991) shall be considered legislative history of, or relied upon in any way as legislative history in construing or applying, any provision of this Act that relates to Wards Cove—Business necessity/cumulation/alternative business practice.

1991). Senator Kennedy also suggested that "where a new rule is merely a restoration of a prior rule that been changed by the courts, the newly restored rule is often applied retroactively." *Id.* Senator Kennedy also commented that "[i]t will be up to the courts to determine the extent to which the bill will apply to cases and claims that are pending on the date of enactment." *Id.*

On the whole, the court concludes that the legislative history of the Act does not clearly indicate one way or the other whether Congress intended the Act to apply to pending cases. If anything, the legislative history suggests that Congress, in an effort to pass the Act, simply left the decision of retroactivity as an issue for the courts to ultimately decide. *See King v. Shelby Medical Center,* 779 F.Supp. 157, 157 (N.D.Ala.1991) (Congress "punted" on the question of whether or not the Act applies retroactively).

Other Considerations

The court recognizes that there are other considerations beyond the language of the Act and its tumultuous legislative history which support arguments both for and against the Act's retroactive application.

One of the primary purposes of the Act is to overturn Supreme Court interpretations of certain statutes. Some courts have recognized that this consideration is at least some support for applying the new amendments retroactively. See *Mojica v. Gannett Company, Inc.,* 779 F.Supp. 94, 97 (N.D.Ill.1991). "Where 'Congress enacts [a] statute to clarify the Supreme Court's interpretation of previous legislation thereby returning the law to its previous posture,' the Act must be applied retroactively." *Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1305 (N.D.Cal.1992) (quoting *Ayers v. Allain,* 893 F.2d 732, 754–55 (5th Cir.), vacated on other grounds, 914 F.2d 676 (5th Cir.1990) (en banc), *cert. granted on other grounds,* — U.S. —, 111 S.Ct. 1579, 113 L.Ed.2d 644 (1991)). "The restorative intent behind the 1991 Civil Rights Act can only be fully satisfied by applying it to cases which were pending at the time of its enactment." *Id.,* at 1306.

In *Stender,* the court also noted that the Civil Rights Act of 1991 is similar to the Civil Rights Restoration Act of 1987. The purpose of the Civil Rights Restoration Act of 1987 was to legislatively overrule *Grove City College v. Bell,* 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984). All but one case held that the Civil Rights Restoration Act of 1987 should apply retroactively. The sole case which did not apply the Civil Rights Restoration Act of 1987 retroactively, however, was *DeVargas v. Mason & Hanger–Silas Mason Co.,* 911 F.2d 1377 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991).

In *King v. Shelby Medical Center,* 779 F.Supp. 157 (N.D.Ala.1991), the court granted the plaintiff's demand for a jury trial. The court commented that "trial by jury or trial by court is purely and simply a 'procedural' question." *Id.* at 158. Conversely, in *Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077, 1081 (E.D.Va. 1992), the court, which denied the plaintiff's request for a jury trial, stated:

Entirely new sanctions have been created by the Act where they did not exist before—compensatory and punitive damages. There can be no dispute that a right to seek compensatory damages in a jury trial is a major substantive provision.

See *Johnson v. Rice,* 2:85–CV–1318, 1992 WL 16284, 1992 U.S.Dist. LEXIS 830 (S.D.Ohio January 24, 1992) ("[B]ecause the relief available to plaintiffs in this action is in the nature of equitable relief, plaintiffs may not properly assert a jury demand.") See also *Van Meter,* 778 F.Supp. at 84 ("A right to seek compensatory damages in a jury trial against the United States is a major substantive provision.")

The court also notes that the Equal Employment Opportunity Commission (EEOC) has issued an opinion against retroactive application of the Act. E.E.O.C. Notice No. 915.002 (December 27, 1991). The EEOC concludes that the damages provisions of the Act do not apply to charges challenging conduct that occurred prior to the effective date of the Act. The damages provisions are "to be considered as a

remedy in all cases involving intentional discriminatory conduct that occurred on or after the Act's effective date, November 21, 1991." *Id.* at page 1. In general, policy guidelines issued by the agency responsible for the enforcement of a statute are entitled to deference. *Johnson v. Rice,* 2:85–CV–1318, 1992 WL 16284, at *3, 1992 U.S. Dist. LEXIS 830, at *10 (S.D.Ohio January 24, 1992); *see Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984).

The court also notes that the Supreme Court granted the petition for writ of certiorari in *Gersman v. Group Health Ass'n, Inc.,* 931 F.2d 1565 (D.C.Cir.1991), *cert. granted, judgment vacated and remanded for further consideration in light of the Civil Rights Act of 1991,* —— U.S. ——, 112 S.Ct. 960, 117 L.Ed.2d 127 (1992). In *Gersman,* the court of appeals held that under *Patterson,* § 1981 does not apply to contract terminations. The implications of the Supreme Court's remand of the case to consider the court of appeals' ruling in light of the Act, are ambiguous at best. The grant of certiorari is not necessarily an endorsement of the retroactive application of the Civil Rights Act of 1991, but may simply be an attempt to posture the important issue for expeditious review by the Supreme Court. *But see Watkins v. Bessemer State Technical College,* 782 F.Supp. 581, 586 (N.D.Ala.1992) ("This court can conceive of no reason for the Supreme Court to vacate and remand *Gersman* unless the Supreme Court believes, as does this court, that the Civil Rights Act of 1991 effectively eliminates the effect of *Patterson* even in cases which preceded that Act.") *See also Holland v. First Virginia Banks, Inc.,* 937 F.2d 603 (4th Cir. 1991), *cert. granted, judgment vacated and the case remanded for further consideration in light of the Civil Rights Act of 1991,* —— U.S. ——, 112 S.Ct. 1152, 117 L.Ed.2d 401 (1992).

In sum, there are reasonable arguments in favor of retroactive application of the Act to pending Title VII cases. In fact, the arguments both for and against retroactive application to pending cases are almost evenly balanced. This court concludes, however, when considered in the light of the presumption against retroactive application, that the Act should not be applied to pending cases.

### Conflicting Presumptions of *Bradley* and *Bowen*

Is there a presumption for or against retroactive application of a statute that is silent or unclear as to whether it should be applied to existing claims? The Supreme Court has adopted two apparently inconsistent approaches regarding which presumption the courts should apply when the plain language and legislative history of a statute do not evidence a clear congressional intent for or against its retroactive application. In *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), the Court held that "a court is to apply the law in effect at the time it renders its decision." In contrast, in *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court reaffirmed the rule that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 109 S.Ct. at 471.

The Supreme Court has recently recognized the "apparent tension" between *Bradley* and *Bowen. Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842, 853 (1990). However, because it was unnecessary to the Court's decision in *Bonjorno,* the majority refused to reconcile the apparent conflict between the two cases. 494 U.S. at 837–39, 110 S.Ct. at 1577–78, 108 L.Ed.2d at 854. In a concurring opinion, Justice Scalia criticized the court for failing to reconcile the two divergent lines of authority. Justice Scalia contends that the *Bradley* presumption should be abandoned and that the traditional presumption against retroactive application of statutes should be applied. 494 U.S. at 840–44, 110 S.Ct. at 1579–80, 108 L.Ed.2d at 856–67.

Recognizing the apparent conflict between *Bradley* and *Bowen,* the courts have struggled with the issue of which presumption should be followed. Some circuits have embraced the *Bradley* presumption, while other circuits have adopted the *Bowen* presumption against retroactive application. *See Burchfield v. Derwinski,* 782 F.Supp. 532, 534–35 n. 3 (D.Colo.1992). In *DeVargas,*[11] the Tenth Circuit, after discussing the apparent conflict between *Bradley* and *Bowen,* commented:

> [W]hen congressional intent on retroactivity is unclear, which resumption—Bradley or *Bowen*—is to govern?
>
> Forced to elect between these contradictory presumptions, we choose *Bowen.* We find that the *Bowen* line of cases is well-entrenched in the history of the Supreme Court jurisprudence, whereas *Bradley* is largely unsupported by its cited authorities.

911 F.2d at 1390.

Several of the cases deciding the retroactive application of the Act have not engaged in any meaningful discussion of the Act. Some of the cases, however, have engaged in extended analysis of the issue. Of those cases which have analyzed the Act, the majority of the cases conclude that the intent of Congress, either from the language of the Act or its legislative history, is ambiguous and look to the presumption in *Bradley* or *Bowen* to decide the retroactivity issue. *See Bristow v. Drake Street, Inc.,* No. 87–C–4412, 1992 WL 14262, at *1 n. 2, 1992 U.S.Dist. LEXIS 499, at *2 n. 2 (N.D.Ill.1992) ("[I]f Bowen's presumption of nonretroactivity were applied here, I would not apply sections 102 and 107 retroactively because the language and legislative history of the Act do not clearly express a congressional intent favoring retroactive application.").

Therefore, the ultimate decision as to whether or not the Act is to be applied retroactively has generally turned on whether the *Bradley* presumption or the *Bowen* presumption is followed. General-

ly, cases which have given retroactive application to the Civil Rights Act of 1991 are cases which have applied the *Bradley* presumption. *See, e.g., Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302 (N.D.Cal. 1992). In comparison, cases which have not given retroactive application to the Act have not applied the *Bradley* presumption. *See, e.g., Hansel v. Public Service Co.,* 778 F.Supp. 1126 (D.Colo.1991).

This court concludes that there is no clear indication that the Act was intended to be applied to cases pending at the time of its enactment. The statute itself contains no specific provision indicating that the Act should be applied retroactively. Nor does the legislative history provide any meaningful insight as to the intent of Congress. In short, if Congress had intended the Act to have retroactive application, it knew how to do so. *See Khandelwal v. Compuadd Corp.,* 780 F.Supp. 1077, 1078 (E.D.Va.1992). Because there is no clear evidence from the statute or its history to indicate that it should be applied to pending cases and because this court must apply the *Bowen* presumption, the court concludes that the statute is not to be applied retroactively to cases pending at the time of the Act was enacted.

Steinle's motion to amend the pretrial order (Dk. 96) is denied.

### Motion to Reconsider and/or Motion to Take an Interlocutory Appeal

On February 14, 1992, Steinle filed a motion to reconsider and/or for permission to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The defendants have filed a response in which they oppose Steinle's motion to reconsider, but acquiesce in Steinle's request to take an interlocutory appeal.

The court has thoroughly reviewed Steinle's motion to reconsider. The court believes that its memorandum and order adequately addresses, either directly or indirectly, many of the arguments raised by Steinle's motion to reconsider. The court

---

**11.** Senator Kennedy, in discussing the fact that most courts had given retroactive application of the Civil Rights Restoration Act of 1988, noted that *DeVargas* had not followed the majority of other courts. 137 Cong.Rec. S15485.

will address each of the arguments not previously discussed.

Steinle suggests that several other civil rights or employee rights statutes have been retroactively applied. While it is true that certain statutes have been given retroactive application, the primary issue for this court to decide is whether Congress intended this Act to apply to pending cases. The court has concluded that neither the Act nor its legislative history clearly indicate that the Act applies to pending cases. Under Tenth Circuit precedent this court concludes that the Act does not apply to pending cases.

Steinle notes that the Tenth Circuit has mentioned the Civil Rights Act in *Patrick v. Miller*, 953 F.2d 1240 (10th Cir.1992). In that case, the plaintiff sought damages under § 1981 and § 1983. The Tenth Circuit reversed the district court's order granting summary judgment on grounds of qualified immunity with respect to plaintiff's 1981 claim, finding material issues of fact precluded summary judgment. The Tenth Circuit noted that it had held, in accord with *Patterson*, that a discriminatory discharge claim is not actionable under § 1981. *See Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 975–76 (10th Cir.1991). The court of appeals went on to comment:

> The Civil Rights Act of 1991 was enacted, in part, to overrule restrictive case precedent and to give effect to Congress' intended broad scope of civil rights protection in the employment context. Civil Rights Act of 1991, Pub.L. No. 102–166, 3 (1991). The 1991 Civil Rights Act specifically amended 1981 to include protection against discriminatory termination of an employment contract. *Id.* 101. However, it is neither necessary nor appropriate for us to discuss the potential applicability of this new legislation given the present posture of this case.

*Id.* at 1251 n. 6.

In reality, this discussion does not really advance Steinle's case for retroactivity as

the court of appeals, at most, merely acknowledged that the Act had amended § 1981. The court of appeals did not, however, decide the issue of whether the Act applied to pending cases.[12]

Steinle also argues that dicta in *Arnold v. Maynard*, 942 F.2d 761 (10th Cir.1991), provides support for the argument that the Civil Rights Act should be applied to her pending claims. In *Arnold*, a pro se prisoner filed an action under 42 U.S.C. § 1983. The district court dismissed Arnold's claim for lack of venue under 28 U.S.C. § 1391(b). The issue considered on appeal was whether the district correctly concluded that it was not the proper venue to consider Arnold's claim. The court of appeals reversed the district court, concluding that venue was proper under 28 U.S.C. § 1392(a). In a footnote, the court of appeals commented:

> This court recently recognized two lines of Supreme Court authority "setting forth conflicting presumptions regarding the retroactive application of a newly enacted federal statute where congressional intent is unclear." *DeVargas v. Mason & Hanger–Silas Mason Co.*, 911 F.2d 1377, 1388 (10th Cir.1990), *cert. denied*, [——] U.S. [——], 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). Faced with irreconcilable Court positions on the issue, *compare Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) and *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), we elected to follow *Bowen's* holding that a statute is to be given only prospective effect unless a contrary legislative intent appears. *DeVargas*, 911 F.2d at 1390–93. In so doing, however, we pointed out that we were there concerned with a statute affecting substantive rights and liabilities. *See id.* at 1392–93. The presumption has always been to the contrary with respect to statutes that ad-

---

12. The court notes that the Tenth Circuit has also commented that "[t]he question of exactly how narrowly *Patterson* restricts section 1981 may soon be mooted by the proposed Civil Rights Act of 1991, S. 1745, 102d Cong., 1st Sess. (1991), which reverses *Patterson* and several other recent Supreme Court civil rights cases." *Padilla v. United Air Lines, Inc.*, 950 F.2d 654, 656 (10th Cir.1991).

dress matters of procedure and jurisdiction. "[W]here a new statute deals only with procedure, prima facie it applies to all actions—to those which have accrued or are pending, and to future actions." 2 N. Singer, *Sutherland Statutory Construction* § 41.04, at 349 (Sands 4th ed. 1986); *see also Hallowell v. Commons*, 239 U.S. 506, 508, 36 S.Ct. 202, 203, 60 L.Ed. 409 (1916) (statute which simply changes tribunal that is to hear case applied to pending action); *Ward v. Resolution Trust Corp. (In re Resolution Trust Corp.)*, 888 F.2d 57, 58 (8th Cir. 1989); *Agfa–Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1524 (7th Cir.1989); *Friel v. Cessna Aircraft Co.*, 751 F.2d 1037, 1039 (9th Cir.1985) (per curiam).

Given our conclusion that venue in this case is proper in the Western District under section 1392(a), we need not address whether, under our holding in *DeVargas*, the amended version of section 1391 would apply to a case pending on appeal on its effective date.

942 F.2d at 762 n. 2.

■ The court is not convinced that this discussion in the footnote necessarily aids Steinle's contention that the Act should be applied to her claims. First, the discussion is basically dicta. Second, this court does not view the Act as entirely "procedural." While the court agrees that many aspects of the Act can be considered procedural or "remedial," the Act contains several provisions that are substantive in nature. Nor does this court believe that it is appropriate to divvy up portions of the Act and apply only those portions which are arguably procedural to pending cases. *See Doe v. Board of County Comm'rs*, 783 F.Supp. 1379, 1385 (S.D.Fla.1992); *but see Joyner v. Monier Roof Tile, Inc.*, 784 F.Supp. 872, 879–80 (S.D.Fla.1992) (disagreeing with *Doe*).

Steinle's motion to reconsider is denied.

### Interlocutory Appeal

In the alternative, Steinle requests to take an interlocutory appeal. The defendants do not oppose the motion. Title 28, United States Code, § 1292(b) provides in pertinent part:

When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing such order. .

Therefore, in order to certify an issue for interlocutory appeal, the court must find: (1) that the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists with respect to that question of law; and (3) an immediate appeal would materially advance the ultimate termination of the case.

■ This court believes that each of the criteria is satisfied. First, the order involves a controlling question of law. Second, as the court has set forth in great detail, a substantial ground for difference of opinion exists as to whether or not the Act applies to pending cases. Third, the court believes that an immediate appeal would materially advance the ultimate termination of this case. A separate journal entry certifying this appeal shall be filed.

IT IS THEREFORE ORDERED that Steinle's motion to amend the pretrial order (Dk. 96) is denied.

IT IS FURTHER ORDERED that Steinle's motion to reconsider (Dk. 103) is denied.

IT IS FURTHER ORDERED that Steinle's motion to take an interlocutory appeal to the Tenth Circuit Court of Appeals (Dk. 103) is granted. The court will file a separate journal entry certifying the interlocutory appeal.