In re H. Craig HELLER, Debtor.

H. Craig HELLER, Appellant,

v.

John E. FOULSTON, United States Trustee, Appellee.

No. 93–4020–SAC.
Bankruptcy No. 92–41445–7.

United States District Court,
D. Kansas.

Oct. 8, 1993.

Craig E. Collins, Jerome M. Saskowski, Topeka, KS, for debtor.

Robert L. Baer, pro se.

## MEMORANDUM AND ORDER

CROW, District Judge.

H. Craig Heller appeals the bankruptcy court's decision granting the United States Trustee's motion to dismiss Heller's Chapter 7 petition under 11 U.S.C. § 707(b). Specifically, the bankruptcy court found that Heller had "substantially abused" the provisions of Chapter 7 because Heller would have surplus disposable income available to repay creditors for which a Chapter 7 discharge was sought. Heller challenges not only the bankruptcy court's factual finding that his petition is a substantial abuse of the Chapter 7, but also the test applied by the bankruptcy court in making that determination. Heller also challenges § 707(b) as unconstitutional.

### Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo. Virginia Beach Federal Sav. and Loan Ass'n v. Wood,* 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider,* 864 F.2d 683, 865 (10th Cir.1988); *see* Bankruptcy Rules 7052 and 8013. "Just as the court of appeals may not conduct an evidentiary hearing for a bankruptcy appeal, so too a district court may not conduct such hearing when it is acting in its capacity as an appellate court. In a bankruptcy appeal, a district court may alter or amend its judgment pursuant to Fed.R.Civ.P. 59(e), but may not conduct a hearing to take additional testimony or other evidence." *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399 (10th Cir.1986).

When reviewing factual findings, an appellate court is not to weigh the evidence or reverse the finding because it would have decided the case differently. *Id.* at 400. The Tenth Circuit has held in the bankruptcy context that "[t]he bankruptcy court's findings should not be disturbed absent the most cogent reasons appearing in the record." *Id.* (quoting *In re Reid,* 757 F.2d 230, 233–234, (10th Cir.1985)). A factual finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Hall v. Vance,* 887 F.2d 1041, 1043 (10th Cir.1989).

### Facts

The underlying facts of this case are undisputed. On August 3, 1992, Heller filed a voluntary petition for relief pursuant to Chapter 7 in the United States Bankruptcy Court for the District of Kansas. Heller's total debt is $40,360.95, which consists exclusively of credit card debts. None of Heller's debts are secured. Prior to filing his voluntary petition, Heller remained current on his payments to his creditors and paid each creditor in monthly installments.

According to the schedules filed, Heller's monthly take home income is $1,829.01; his monthly expenses are $2,249.40—creating a monthly deficit of $420.39. Heller's monthly expenses included $1,170, which is allocated to pay unsecured credit card debts. If the unsecured creditors were discharged, Heller would have a monthly surplus of $749.61. The approximate value of Heller's exempt property is $8,573.27, of which $6,323.27 is a qualified pension plan.

On November 6, 1992, the United States Trustee filed a motion to dismiss pursuant to 11 U.S.C. § 707(b), alleging that the surplus of Heller's income could be used to fund a Chapter 13 plan, and that this fact alone was a substantial abuse of the provisions of Chapter 7. On January 26, 1993, after a hearing on the Trustee's motion, the bankruptcy court filed its memorandum decision sustaining the Trustee's motion. The order of dismissal states in pertinent part:

4. Debtors (sic) income and expense statements reflect a monthly disposable income of $749.61.

5. At no time has debtor contested the "consumer" nature of the debt nor has debtor contested the amounts shown as expense and income and the amount of disposable income. Debtor has not amended his schedules.

6. The existence of $749.61 of disposable income exhibits an ability to repay the debts for which a Chapter 7 discharge is sought.

7. The existence of $749.61 and the ability to repay is a substantial abuse of the provisions of Chapter 7 of the United States Bankruptcy Code.

Heller timely appeals to this court.

### An Overview of U.S.C. § 707(b)

In *In re Scheinberg*, 134 B.R. 426 (D.Kan. 1992), this court recently considered section 707(b):

> Section 707(b) is one of several consumer credit amendments to the Bankruptcy Code made by Congress in 1984 in response to pressure from the consumer credit industry. *In re Green*, 934 F.2d 568, 570 (4th Cir.1991). Section 707(b) provides:
>
> > (b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.
>
> This provision creates the means for preventing an unscrupulous debtor from abusing Chapter 7 and from unfairly taking advantage of consumer creditors. The courts have broken down the applicability of § 707(b) into two separate inquiries. First, are the debtor's debts primarily consumer debts? Second, would the allowance of Chapter 7 relief to the debtor·be a substantial abuse of this chapter? In this

case, there is no dispute that the debtors have primarily consumer debts. What constitutes "substantial abuse" and what factors should be considered under this inquiry are specifically the questions raised on appeal.

134 B.R. at 427–428.

In determining the meaning of the phrase "substantial abuse" found in § 707(b), this court commented:

> Congress chose not to define this term in the text of § 707(b), and there is no significant legislative history behind it. n3 Consequently, courts have struggled with the concept and have adopted differing approaches.n4 As of the 'date of this opinion, the Tenth Circuit has not addressed the meaning of "substantial abuse" in the § 707(b) context or the factors to be weighed under it.

Footnotes

> n3 Legislative history does reflect that § 707(b) was one of the amendments intended to stem the use of Chapter 7 by unneedy debtors. *In re Walton*, 866 F.2d 981, 983 (8th Cir.1989). Some courts have resorted to legislative history behind Senate Bill, S. 445, which was introduced in 1983 and contained many of the 1984 amendments. *See, e.g., In re Kelly*, 841 F.2d 908, 914 (9th Cir.1988). *But see, e.g., In re Green*, 934 F.2d at 571. The committee report on the final version of S. 445 states that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep. No. 98–65, 98th Cong., 1st Sess. 54 (1983).

> n4 The Fourth Circuit has hypothesized that the ambiguity of the term, "substantial abuse," and the lack of any statutory definition is explained by Congress' difficulty in balancing the competing policies of giving the debtor a fresh start and of limiting consumer credit abuse. *In re Green*, 934 F.2d at 571.

> As adopted by the Ninth Circuit, one approach is "that a debtor's ability to pay his debts will, standing alone, justify a section 707(b) dismissal." *In re Kelly*, 841

F.2d 908, 914 (9th Cir.1988) (citations omitted); *see also In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989) ("That factor [ability to repay] alone may be sufficient to warrant dismissal.") The Ninth Circuit reached this conclusion after reviewing numerous bankruptcy court decisions which had considered the principal factor for determining substantial abuse to be the debtor's capability for repayment of the debts. 841 F.2d at 914.

In contrast, other courts have looked to the totality of the circumstances and given emphasis to the debtor's ability to pay the debts for which discharge is requested. *In re Green*, 934 F.2d [568] at 571–73; *In re Walton*, 866 F.2d 981, 984–85 (8th Cir. 1989); *Waites v. Braley*, 110 B.R. 211, 215 (E.D.Va.1990); *In re Vesnesky*, 115 B.R. 843, 847–48 (Bankr.W.D.Pa.1990). Other factors to be considered include:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*In re Green*, 934 F.2d at 572 (quoting *In re Strong*, 84 B.R. 541, 545 (Bankr.N.D.Ind. 1988); *In re Grant*, 51 B.R. 385, 392 (Bankr.N.D.Ohio 1985)). Under this approach, the courts do not per se dismiss when the debtor has the ability to repay but balance this factor along with other mitigating circumstances. *See, e.g., In re Vesnesky*, 115 B.R. at 849; *In re Higginbotham*, 111 B.R. 955, 964–65 (Bankr.N.D.Okla.1990).

Regardless of the approach taken, it is clear that the primary factor involved in § 707(b) determinations is the debtor's capacity for repayment. The rationale behind the significance given to this factor is equally clear. A debtor would receive a "head start" rather than a "fresh start" if he could escape debts for which he has the means to repay. *Waites v. Braley*, 110 B.R. at 215. " 'It is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them.' " *Waites v. Braley*, 110 B.R. at 215 (quoting *In re Hudson*, 56 B.R. 415, 419 (Bankr.N.D.Ohio 1985)).

134 B.R. at 428–429.

In *Scheinberg*, the debtors' scheduled indebtedness totaled $489,810.91. Included in that total debt were secured debts of $337,-318.08 and unsecured debts of $130,117.44. The debtors' monthly take home income was $9,000.00. Their estimated monthly expenses were $7,066.08, leaving a disposable income of approximately $1,933.92. This court affirmed the bankruptcy court's dismissal of the debtors' voluntary Chapter 7 bankruptcy petition.

### Arguments of the Parties

In the case at bar, as in *Scheinberg*, there is no dispute that Heller's debts are primarily consumer debts. Instead, Heller asserts four arguments challenging the bankruptcy court's ruling:

(1) The legislative history of § 707(b) does not support the use of a "future income test;"

(2) The bankruptcy court's interpretation of § 707(b) created a *de facto* involuntary Chapter 13 bankruptcy (which has been rejected by Congress);

(3) Section 707(b) denies the debtor due process of law under the Fifth Amendment of the United States Constitution due to its vagueness;

(4) *Scheinberg* is factually distinguishable from his case.

The Trustee has responded to each of Heller's arguments. Having considered the arguments of the parties and the applicable law, the court is now prepared to rule.

### Analysis

### Does the legislative history of § 707(b) support a future income test?

Heller contends that the legislative history of § 707(b) indicates that Congress

did not intend to incorporate a "future income test" in determining whether granting a debtor relief constituted a substantial abuse of Chapter 7. Specifically, Heller contends that statements by Representative Rodino, as Chairman of the House Committee on the Judiciary clearly indicate that Congress did not intend to include a future income test. Heller also contends that because Congress rejected Senate Bill 445 which contained a future income test, the determination of whether a debtor's petition constituted a "substantial abuse" was not intended to include such a test.

The Trustee argues that the legislative history does not foreclose the courts from considering a debtor's future income.

■ In the past, this court has expressed its misgivings about reliance upon legislative history as a means of determining congressional intent. *See, e.g., Foster v. Lawrence Memorial Hospital,* No. 91–1151–C, 1992 WL 24099, 1992 U.S.Dist. LEXIS 1368 (D.Kan. January 8, 1992).

> While the legislative history of a statute may sometimes be instructive, reliance on certain types of "legislative history" is often a dicey proposition at best. Courts should carefully scrutinize whether the legislative history evidences Congress' intent or is merely the expression of one person's personal viewpoint injected into the record in an effort to sway the courts in a manner that person was unable to persuade the legislature.

*Steinle v. Boeing,* 785 F.Supp. 1434, 1439 (D.Kan.1992). Nor is the court persuaded in this instance that the legislative history of § 707(b) precludes a court from considering the future income of a debtor in determining whether granting relief would constitute a substantial abuse of Chapter 7. In *In re Walton,* the Eighth Circuit considered and expressly rejected arguments similar to those advanced by Heller in this case.

> "To the extent that legislative history may be considered, it is the official committee reports that provide the authoritative expression of legislative intent," not the "stray comments by individual legislators" on the floors of the House and Sen-

ate. *Zolg v. Kelly (In re Kelly),* 841 F.2d 908, 912 n. 3 (9th Cir.1988) (citing *Garcia v. United States,* 469 U.S. 70, 76, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)). Statements by opponents of a bill shed little light on the intent of Congress in passing legislation. *See NLRB v. Fruit & Vegetable Packers, Local 760,* 377 U.S. 58, 66, 84 S.Ct. 1063, 1067, 12 L.Ed.2d 129 (1964); *Schwegmann Bros. v. Calvert Distillers Corp.,* 341 U.S. 384, 394–95, 71 S.Ct. 745, 750–51, 95 L.Ed. 1035 (1951). In this case, there were no committee reports on the final version of the Act. Therefore, the report on an earlier draft, S. 445, although far from conclusive, "is the best available evidence of Congress's intent in enacting section 707(b)." *Kelly,* 841 F.2d at 914 n. 7. This report states that section 707(b) "upholds creditors' interests in obtaining repayment where such repayment would not be a burden" on the debtor. S.Rep. No. 65 at 53. "If a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." *Id.* at 54. This language seems to anticipate that a court, in considering "substantial abuse" under section 707(b), will look to a debtor's ability to repay his creditors out of his future income. We believe that in deleting the mandatory future income threshold formula, Congress simply replaced a rigid test with a flexible "substantial abuse" standard that does not foreclose the courts from considering, inter alia, the debtor's ability to pay his debts out of his future income. *See Kelly,* 841 F.2d at 914.

*In re Walton,* 866 F.2d at 983.

This court agrees that the legislative history does not preclude the courts from considering a debtor's future income. The court also notes that "[w]hen Congress enacted § 707(b) in 1984, it also added the requirement that debtors file an Income/Expense Schedule '[t]o facilitate addressing the question of abuse in Chapter 7 case.'" *Fonder v. U.S.,* 974 F.2d 996, 999 (8th Cir.1992). Because Congress imposed this additional filing requirement upon persons seeking relief un-

der Chapter 7,[1] this is some indication that Congress intended courts to consider whether debtors have the ability to pay their debts out of future income (based upon current income and expenses) in determining whether to grant the relief request.

The court also notes that almost a decade has passed since § 707(b) was enacted. Since that time, the majority of courts have interpreted the phrase "substantial abuse" to encompass the consideration of the debtor's ability to pay his debts out of future income. *In re Walton*, 866 F.2d at 984. If the courts have misinterpreted § 707(b), Congress could have corrected any error committed by the courts by enacting new legislation. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 172–173, 109 S.Ct. 2363, 2369–2371, 105 L.Ed.2d 132 (1989) ("We have said also that the burden borne by the party advocating the abandonment of an established precedent is greater where the Court is asked to overrule a point of statutory construction. Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done.").[2]

### Does the bankruptcy court's interpretation of § 707(b) create a *de facto* involuntary Chapter 13 bankruptcy (which has been rejected by Congress)?

■ Heller argues that the bankruptcy court's interpretation of § 707(b) created a *de facto* involuntary Chapter 13 bankruptcy. Heller contends, *inter alia*, that Congress has rejected a mandatory Chapter 13 provision, and that by dismissing his Chapter 7 petition, the bankruptcy court has indirectly compelled him to file for relief under Chapter 13.

The Bankruptcy Court, by granting the Motion of the Trustee, is not directly compelling the debtor into a Chapter 13 Plan, but the result would be no different than compelling the debtor to continue to work to satisfy his creditors. This ultimate result rings of debt peonage and provides a different means to achieve a prohibited end.

Appellant's brief, p. 12.

Heller also indicates that he has remained current on his payments until the time of filing his petition in bankruptcy, and that he has attempted to repay his creditors by sacrificing his standard of living in the process. Heller argues that the bankruptcy court's ruling only formalizes his attempts to voluntarily repay his creditors. Heller argues that equating "substantial abuse" with the eligibility to fund a Chapter 13 plan is not consistent with Congressional intent. Heller concludes that because the only factor supporting the bankruptcy court's decision is the fact that he can fund a Chapter 13 plan, the Trustee has not overcome the presumption in favor of granting him discharge.

The Trustee responds that there is no constitutional right to bankruptcy discharge and that dismissal pursuant to § 707(b) is not tied to the debtor being able to file for relief under Chapter 13.

■ The bankruptcy court's ruling does not create a *de facto* involuntary Chapter 13 bankruptcy. "There is no constitutional right to a bankruptcy discharge, and the 'fresh start' provided for by the Code is a creature of congressional policy." *In re Krohn*, 886 F.2d at 127; *Fonder*, 974 F.2d at 999 n. 4 ("There is no constitutional right to bankruptcy protection."). "Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit." *In re Krohn*, 886 F.2d at 127. Moreover, although "§ 707(b) may have the effect of relegating a debtor to Chapter 13 if he wants any bankruptcy relief, any decision to utilize Chapter 13 remains that of the debtor." *In re Walton*, 866 F.2d at 984, n. 6 (quoting *In re Edwards*, 50 B.R. 933, 939 (Bankr. S.D.N.Y.1985); *see* 11 U.S.C. § 706(c) (court may not convert Chapter 7 petition into Chapter 13 without debtor's request). The court also notes that "[i]n some cases, despite a substantial abuse dismissal, the debtor may

---

1. "The same petition and schedules are filed to commence Chapter 13 and Chapter 7 proceedings." *Fonder*, 974 F.2d at 999.

2. *Patterson* was legislatively overruled by the Civil Rights Act of 1991. *See Steinle*, 785 F.Supp. at 1436.

not qualify under Chapter 13." *Fonder,* 974 F.2d at 999.

In regard to Heller's argument that the Trustee has not overcome the presumption that a debtor is entitled to Chapter 7 discharge, that presumption is rebuttable, not conclusive. *See Scheinberg,* 134 B.R. at 431. As discussed below, the court is satisfied that the bankruptcy court's decision is supported by the evidence.

**Does § 707(b) deny the debtor due process of law under the Fifth Amendment of the United States Constitution due to its vagueness?**

■ Heller contends that § 707(b) denies a debtor due process as it is unconstitutionally vague. Heller contends that § 707(b) does not give fair warning to debtors, as the phrase "substantial abuse" is not defined by specific guidelines or criteria upon which he could determine the meaning of the phrase. Heller suggests that the vagueness of § 707(b) is proven empirically by the history of court decisions which have produced "no consistent, identifiable standard of conduct which would be considered acceptable or prohibitive."

The Trustee responds that § 707(b) is not unconstitutionally vague. The Trustee notes that § 707(b) has withstood similar challenges in other courts. The Trustee argues that no "warning" is appropriate, as § 707(b) withholds extraordinary relief, "where such relief is unnecessary and inappropriate." The Trustee's brief goes on to state:

> The rationale for requiring a warning is convoluted. Unless a debtor is going to plan his bankruptcy before he is even in debt, a warning of exactly what "substantial abuse" is, would not be of help. In most cases, once a debtor reaches a situation in which he needs bankruptcy relief, his debt and income are set, as would any mitigating circumstances.

Appellee's brief, p. 11. The Trustee also argues that, undefined terms such as "good faith" are nebulous concepts that have withstood constitutional challenge. The Trustee concludes that "[c]ase law and the discretion of the Court have filled the intentional void

left by Congress in not specifically defining 'substantial abuse.'"

The court concludes that § 707(b) is not unconstitutionally vague. In *In re Kelly,* the debtor argued that the terms "substantial abuse" found in § 707(b) were unconstitutionally vague. The court of appeals disagreed, noting that "the Supreme Court has upheld statutes that contain equally undefined standards of decision. *See, e.g., Nash v. United States,* 229 U.S. 373, 376–78, 33 S.Ct. 780, 781–82, 57 L.Ed. 1232 (1913) ("unreasonable" restraints of trade)." 841 F.2d at 916.

Similarly, in *In re Higginbotham,* 111 B.R. 955, 965–966 (Bankr.N.D.Okla.1990), the debtors argued that § 707(b) was unconstitutionally vague.

> Debtors assert that the lack of definition of the term "substantial abuse" subjects them to arbitrary, capricious deprivation of right or liability to penalty, and cite *Connally v. General Construction Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *Winters v. New York,* 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); and *Garner v. White,* 726 F.2d 1274 (8th Circ.1984). These cases deal with statutes creating criminal or quasi-criminal penalties and/or with threatened infringement of 1st Amendment rights. Where 1st Amendment freedoms are not concerned, the rule is that a statute is unconstitutionally vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all," *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971); *and see Village of Hoffmann Estates v. The Flipside, Hoffmann Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Debtors also cite *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), which appears to declare a similar rule;

that case proscribes criminal statutes which are "intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent" and which are "purely arbitrary, and acknowledge ... neither guidance nor constraint," *id.* 118 U.S. at 366, 367, 6 S.Ct. at 1069, 1069. Civil statutes are subject to less rigorous review than criminal statutes, *Village of Hoffmann Estates v. The Flipside, Hoffmann Estates, Inc., supra,* 455 U.S. at 499, 102 S.Ct. at 1193.

11 U.S.C. § 707(b) is not criminal or quasi-criminal. It does not infringe on any Constitutional right, and indeed does not deprive debtors of any "right" and is not a "penalty" at all. A discharge in bankruptcy, and especially in Chapter 7, is an injunction, 11 U.S.C. § 524(a), which represents an extraordinary intervention of equity in debtors' normal legal and financial affairs. As such, it is a privilege, not a "right" in the sense of something to be demanded at any time by all and sundry. 11 U.S.C. § 707(b) calls for withholding of this extraordinary relief where such relief is unnecessary and inappropriate—for withholding of this extraordinary privilege where debtors do not deserve the privilege. Equity's refusal to intervene where intervention would be improper takes nothing away from debtors, but merely restores or leaves unaffected debtors' own normal arrangement of rights and liabilities under State and other non-bankruptcy law. Debtors might as well argue that an equity court's refusal to grant an injunction where sufficient cause was not shown, violates debtors' "rights" and inflicts a "penalty." Of course, even a privilege should be granted or withheld according to some standard. Section 707(b) does provide a standard, even though the details must be worked out by judicial decisions. This is not uncommon—"fraud" and "good faith" are such terms; so is "due process" itself. Debtors protest that judges will define and apply the substantial-abuse standard "in an arbitrary and unequal fashion," debtors' brief p. 7. No doubt judges will apply it unequally, so long as judges remain human—this cannot be helped and is a problem not confined to § 707(b). But "unequal" is not necessarily

"arbitrary or capricious." If the possibility of judicial difference of opinion violates equal protection, then pretty much all of our law, statutory or otherwise, is unconstitutional. We strive toward a government of laws, not men; but we cannot have a government of robots. Although 707(b) unavoidably subjects debtors to judicial difference of opinion, it does not subject them to judicial whim without "guidance or constraint," *Yick Wo v. Hopkins, supra,* 118 U.S. at 367, 6 S.Ct. at 1069. While the statute might have been more specific, it is definite enough to pass Constitutional muster in this regard.

111 B.R. at 965–966.

As suggested by the bankruptcy court during the January 13, 1993, hearing, the phrase "substantial abuse" is like the phrase "good faith" in that both phrases survive constitutional scrutiny, albeit that the phrases do not establish precise, exact standards of conduct.

### Is *Scheinberg* factually distinguishable from this case?

■ Heller contends that his case is factually distinguishable from *Scheinberg* and that the bankruptcy court erred in dismissing his petition under § 707(b). Heller contends that the debtors in *Scheinberg* enjoyed a net income of approximately $9,000 per month and were persons who maintained a substantially higher standard of living than he does. Heller contends that he leads a much more conservative life-style than the debtors in *Scheinberg.*

Heller also contends his estimates of certain expenses submitted on the schedules are extremely conservative, meaning that the schedules underestimate expenses that he will likely incur in the immediate future. As an example, Heller drives an 11–year–old Buick and that it is likely he will have to buy a new car during the life of a Chapter 13 Plan. Heller also notes that if he were allowed discharge, he would not retain property of much value.

The Trustee argues that although the amounts of income and expenses in *Scheinberg* were larger than the amounts involved here, the principles are still the same. The Trustee contends that the bankruptcy court

correctly determined that Heller had monthly disposable income available to make substantial payment to creditors, even if Heller had to repair his car or purchase a new one in the future.

The bankruptcy court's finding of substantial abuse is supported by the evidence. There is no evidence that Heller's financial problems were caused by calamity, unemployment, illness or other similar event. Instead, from a review of Heller's "Schedule F—Creditors Holding Unsecured Nonpriority Claims," it appears that he has charged approximately $40,000 on several credit cards and now seeks relief under Chapter 7 from his improvidence. The bankruptcy court expressly considered Heller's arguments concerning his potential need for a new auto. The bankruptcy court explained that such events have occurred to Chapter 13 debtors in the past and further explained the procedure generally followed the bankruptcy court to address such contingencies. In sum, the bankruptcy court did not err in finding that Heller, in the long run, can afford to pay his consumer debts and that to allow him to discharge those debts would be a substantial abuse of Chapter 7.

IT IS THEREFORE ORDERED that the bankruptcy court's order of dismissal is affirmed.